COMMISSIONER OF INTERNAL REVENUE v. CLEVELAND ADOLPH MAYER REALTY CORPORATION.

No. 10363.

Circuit Court of Appeals, Sixth Circuit.

April 14, 1947.

SIMONS, Circuit Judge, dissenting.

———◆———

I. Henry Kutz, of Washington, D. C. (Sewall Key, J. Louis Monarch, and Helen Goodner, all of Washington, D. C., on the brief), for petitioner.

Irwin N. Loeser, of Cleveland, Ohio (Irwin N. Loeser and Daniel W. Loeser, both of Cleveland, Ohio, on the brief), for respondent.

Before HICKS, SIMONS, and MILLER, Circuit Judges.

HICKS, Circuit Judge.

Petitioner, Commissioner of Internal Revenue, seeks a review of the decision of the Tax Court that there are deficiencies in income tax due by the taxpayer, Cleveland Adolph Mayer Realty Corporation, the respondent, for the years 1940, 1941 and 1942, in the respective amounts of $677.63, $950.55 and $1021.19.

Upon its organization in 1938, the taxpayer acquired a building which, concededly, had been constructed by its predecessor in 1915 at a cost of $131,565.96. Until December 21, 1939, the taxpayer and its predecessor had taken depreciation on the building at the rate of 3% annually upon a

supposed cost of $165,000, excepting six months of the year 1915 and the full years of 1916, 1917 and 1921, when no depreciation was claimed and no deduction therefor allowed.

The 3% depreciation rate was figured on a thirty-three and a third year life for the building. As of January 1, 1940, the parties agreed that the allowance for depreciation should be based upon a fifty year life.

As indicated above, income taxes for the years 1940, 1941 and 1942 are here involved. Our question is: How to arrive at an adjusted basis on December 31, 1939 for depreciating the remaining twenty-five years of the life of the building, in view of the three and a half years, when no depreciation was taken.

The Commissioner and the taxpayer deducted from the $131,565.96 cost the depreciation reserve which had been claimed for the years 1918-20 and for 1922-39, inclusive, at the rate of 3% on the supposed $165,000 cost, but they failed to agree on the rate to be used in calculating the depreciation for the period for which none had been claimed or allowed. The taxpayer insisted that the calculation should be made at the rate of 2% upon the cost price of $131,565.96 since both parties agree that the building had a life of fifty years.

The Commissioner asserted that the 3% rate should be used, since depreciation is to be calculated on the facts known at the end of each year and since in the tax periods in question the building had a supposed life of thirty-three and a third years. If the 2% rate is used, the depreciation for the three and a half years (six months in 1915, all of 1916, 1917 and 1921) in which none was taken, would, on December 21, 1939, aggregate $9209.60 with a total recovered cost of $113,059.60. If the 3% rate is used, the aggregate would be $13,-814.43, with a total recovered cost of $117,-764.43. Under the taxpayer's claim, undepreciated cost on December 31, 1939, would be $18,406.36, and under the Commissioner's insistence, $13,801.53. If the larger base is used the allowance for the tax years 1940, 1941 and 1942 would be larger and the tax less. The Commissioner, using the smaller base, determined deficiencies for 1940-1-2. The Tax Court, following its own decision in Mutual Fertilizer Co. v. Commissioner, 5 T.C. 1122, decided that the depreciation "allowable" for the years 1915, 1916, 1917 and 1921 should be computed at the revised rate of 2%; whereupon the Commissioner sought review.

The applicable statutes are Sec. 23(l) and Sec. 113(b) (1) (B) of the Internal Revenue Code, (26 U.S.C.A. Int.Rev.Code, §§ 23(l), 113(b) (1) (B). Sec. 23(l) provides in part:

"Sec. 23. In computing net income there shall be allowed as deductions:

\* \* \* \* \* \*

"(l) Depreciation. A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business \* \* \*."

Sec. 113(b) (1) (B) reads in part:

"(b) Adjusted basis. The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided.

"(1) General Rule. Proper adjustment in respect of the property shall in all cases be made—

\* \* \* \* \* \*

"(B) in respect of any period since February 28, 1913, for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent allowed (but not less than the amount *allowable*) under this chapter or prior income tax laws. \* \* \*" (Italics ours.)

Treasury Regulations 103, Sec. 19.113(b) (1)-1 (and the same section in effect in T. R. 111), provide in part:

"\* \* \* A taxpayer is not permitted to take advantage in a later year of his prior failure to take any depreciation allowance. \* \* \* *The determination of the amount properly allowable shall, however, be made on the basis of facts reasonably known to exist at the end of such year or period.* \* \* \*" (Italics ours.)

Treasury Regulations 103, Sec. 19.23(l)-5 providing "Method of computing depreciation allowance" (and the same section in effect in T.R. 111) provide in part:

"\* \* \* The reasonableness of any claim for depreciation shall be determined

upon the conditions *known to exist at the end of the period for which the return is made.* * * *

"*A taxpayer is not permitted under the law to take advantage in later years of his prior failure to take any depreciation allowance.* * * *" (Italics ours.)

The Commissioner insists that in utilizing the 2% rate, the Tax Court erroneously failed to apply the regulations. There is nothing in the Tax Court's decision indicating that it considered the regulations at all.

In Mutual Fertilizer Co. v. Commissioner, supra, the majority opinion made no reference to the regulations and that it considered them at all appears only from a statement in the dissenting opinion of Judge Disney, to wit, "As I view this situation, the majority opinion disregards the regulation without saying that it is invalid; * * *"

In that case the majority opinion simply stated:

"The case is one in which a twenty-year useful life period was mistakenly applied in 1934 and it now appears that the proper life span was at all times thirty-three years. In the circumstances we think it must be held that the depreciation 'allowable' for the years in question should be computed upon the longer useful life period."

The opinion concluded:

"However, under the circumstances here present, the depreciation allowable for the open years on the basis of the shorter useful life should, we think, give way to that allowable under a computation based upon the corrected life span."

The question whether the decision of the Tax Court is in accordance with law when tested by the provisions of the statutes, and especially of the regulations, is clearly presented. Trust of Bingham v. Commissioner, 325 U.S. 365, 370, et seq., 65 S.Ct. 1232, 89 L.Ed. 1670; John Kelley Co. v. Commissioner, 326 U.S. 521, 66 S.Ct. 299; Dobson v. Commissioner, 320 U.S. 489, 64 S. Ct. 239, 88 L.Ed. 248.

 The statute, Sec. 113(b) (1) (B), has been in effect since 1932. Sec. 19,113 (b) (1)-1 has been included in the regula- tions since 1934 and Sec. 19.23(1)-5 since 1921, during which time the statutory sections have been repeatedly re-enacted without change.

In Helvering v. Winmill, 305 U.S. 79, 83, 59 S.Ct. 45, 46, 83 L.Ed. 52, it was said:

"Treasury regulations and interpretations long continued without substantial change, applying to unamended or substantially re-enacted statutes, are deemed to have received congressional approval and have the effect of law."

Moreover, it affirmatively appears that in considering the 1932 amendment to Sec. 113(b) (1) (B), the Senate Finance Committee, S.Rep. 665, 72nd Congress, 1st Sess., p. 29, approved the regulations. Its report appears in part:

"Your committee has not thought it necessary to include any express provision against retroactive adjustments of depreciation on the part of the Treasury as the regulations of the Treasury seem adequate to protect the interests of the taxpayers in such cases. These regulations require *the depreciation allowances to be made from year to year in accordance with the then known facts,* and do not permit a retroactive change in these allowances by reason of the facts developed or ascertained after the years by which such allowances are made." (Italics ours.)

 Since no claim for depreciation was made in 1915-16-17 and 1921, no depreciation was "allowed." The question presented therefore is, what depreciation was "allowable?" The answer is found in Sec. 19.113(b) (1)-1, T.R. 103, to wit:

"The determination of the amount properly allowable * * * shall be made on the basis of facts reasonably known to exist at the end of such year or period."

This language refers to conditions known or existing at the time and not those ascertained years later, and the Tax Court gave no reason for disregarding the regulation and permitting conditions ascertained years later to control the rate and hence the amount of allowable depreciation for those years.

The Circuit Court of Appeals for the Fifth Circuit in reversing the decision of the Tax Court in Commissioner v. Mutual

Fertilizer Co., supra, 159 F.2d 470, 472, said:

"The error of The Tax Court lies in its majority's view that it 'now appears', years after the end of the periods for which 'allowable' amounts must be determined, that 33 years is and was the foreseeable useful life of the plant assets. *The crucial factor is not what 'now appears', but what 'then appeared' to be the useful life of the plant; that is, what reasonably was known and ascertainable at the end of each of such periods as to the reasonably foreseeable useful life of the plant."* (Italics ours.)

See also Goss & DeLeeuw Mach. Co. v. United States, D.C., 53 F.Supp., 853.

Indeed, the Supreme Court in Virginian Hotel Corp. v. Helvering, 319 U.S. 523, 525, 63 S.Ct. 1260, 1261, 87 L.Ed. 1561, 152 A.L.R. 871, in a discussion preliminary to its consideration of the main question, makes it abundantly clear that the amount "allowable" for depreciation must be taken "each year." We quote:

" * * * The basis upon which depreciation is to be 'allowed' is the cost of the property with proper adjustments for depreciation 'to the extent allowed (but not less than the amount allowable) under this Act or prior income tax laws.' That provision makes it plain that the depreciation basis is reduced by the amount 'allowable' *each year whether or not it is claimed.* * * * Moreover the basis must be reduced by that amount even though no tax benefit results from the use of depreciation as a deduction. *Wear and tear do not wait on net income.* Nor can depreciation be accumulated and held for use in that year in which it will bring the taxpayer the most tax benefit. *Congress has elected to make the year the unit of taxation.* * * * *Thus the amount 'allowable' must be taken each year.* * * * *"* (Italics ours.)

See discussion in United States v. Ludey, 274 U.S. 295, 300, 301, 47 S.Ct. 608, 71 L. Ed. 1054; Kittredge v. Commissioner, 2 Cir., 88 F.2d 632; United States Industrial Alcohol Co. v. Helvering, 2 Cir., 137 F.2d 511, 517. And if depreciation is to be taken each year, it must perforce be taken upon the basis of the understanding of value existing at that time (at the end of the accounting period), and not, as has been said in the light of "hindsight."

The decision of the Tax Court is reversed and the cause remanded for further proceedings not inconsistent herewith.

SIMONS, Circuit Judge (dissenting).

I regret that I am unable to concur. While I am not of those who would press the Dobson doctrine to logical or illogical extremes, or who view with complacency the growing tendency to subordinate a great system of constitutional courts to administrative tribunals, it is nevertheless clear to me that determination of the useful life of property is one of fact within the competence and exclusive province of the Tax Court, whether in the post-Dobson or pre-Dobson era.

When, in 1915, the building here involved was constructed, it was assumed to have a useful life of 33⅓ years and so depreciation was taken in each tax year by its several owners at the rate of 3%. In 1940 it was agreed that this assumption was erroneous and the building had a useful life of 50 years, with an allowable annual depreciation of 2%. Depreciation at this rate was claimed and allowed for 1940, 1941 and 1942. It was found, however, upon computation of the depreciation base, that for half of 1915, and the full years 1916, 1917 and 1921, no depreciation had been claimed. The taxpayer, accepting the rule of Virginian Hotel Corp. v. Helvering, that the depreciation base must be reduced by deductions allowable for years when no deductions were claimed, reduced the base by deductions from it for the open years at the rate of 2%. The Commissioner asserted the 3% rate for those years. When the issue reached the Tax Court, that tribunal had before it two circumstances, the first, a prospective estimate of useful life projected in 1915, and the second an agreement in 1940 between taxpayer and Commissioner that the useful life of the building was, in fact, 50 years. It made a finding, indicated in Syllabus 2 of its opinion, that the depreciation sustained in the open years was sustained at the rate of 2% rather than 3%, following its own decision in Mutual Fertilizer Company, 5 T.C. 1122. While this finding lacks something in explicitness,

it is perfectly clear that the Tax Court, to which is committed the drawing of inferences from evidentiary facts, concluded that the building had always had a useful life of 50 years, which of course, includes the open years here involved, and that the fact was reasonably known or ascertainable at the end of each year. The greater depreciation deducted and allowed in other years was, of course, beyond its reach by reason of § 113(b) (1) (B) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 113(b) (1) (B), interpreted and applied in the Virginian Hotel case.

It is now urged by my brothers that the Tax Court is precluded from drawing the inference it did by Treasury Regulation 103, § 19.113(b) (1)-1, T.R. 111 and § 19.23 (1)-5, the first providing that the determination of the amount properly allowable shall be made on the basis of facts reasonably known to exist at the end of the taxable year or period, and the second precluding the taxpayer from taking advantage in later years of his prior failure to take any depreciation allowance. The failure of the Tax Court to apply these regulations is said to present to this court a question of law.

It was pointed out by Mr. Justice Douglas in the Virginian Hotel case, that under our federal tax system there is no machinery for formal allowances of deductions from gross income. Deductions stand, if the Commissioner takes no steps to challenge them, and if they are not challenged they are allowed, since tax liability is then determined on the basis of the returns, and that apart from contested cases that is the only way in which deductions are "allowed." What was said of allowed deductions applies even more forcibly to "allowable" deductions. Up to the time of the Commissioner's present challenge and when this case reached the Tax Court, there was no determination of the allowable deductions during the open years. The deductions claimed in other years at 3% and standing unchallenged by the Commissioner, had no other basis except a forecast of useful life made in 1915, assumed to be correct until 1940 when, in the light of actual experience, it was found to be inaccurate.

The Tax Court now finds that in the light of that experience, culminating in the agreement of 1940, the actual rate of depreciation during the open years was 2% and not 3%.

My brothers argue, however, that this is "hindsight," that depreciation must be considered upon the basis of an understanding of value existing at the end of each annual or accounting period. But a consideration of allowable deductions must always be hindsight—it cannot be otherwise. If a depreciation is claimed in a tax return and not challenged, it is an allowed depreciation,—if it is not claimed it must, nevertheless, to the extent allowable, be deducted from the depreciation base. But this ascertainment only involves the base for taking depreciation in subsequent years and is made in subsequent years. This would appear to be beyond dispute. So when the Tax Court came to consider the Commissioner's challenge to the 2% deductions claimed by the present taxpayer in the years 1940 to 1942 inclusive, it became necessary for the Tax Court to determine what was the actual depreciation in the open years at the end of each tax period. This we must assume it did, or else the expertness in accounting, interpretation and valuation, with which the Supreme Court so eloquently credited it in the Dobson case, has no foundation in fact. It is inconceivable that the Tax Court was unfamiliar with or ignored the Treasury Regulations, especially in view of Judge Disney's challenge in the Mutual Fertilizer case. It must be noted that the present decision is by a unanimous court and the conclusion is inescapable that the determination of allowable deductions at 2% in the open years was based upon facts reasonably known or readily ascertainable at the end of each of the open years here involved.

There is here no accumulation of depreciation to be held for use in a subsequent year when it would bring the taxpayer more taxable benefit. The question here does not involve ignoring deductions in the open years. It is limited simply to the applicable rate. The Tax Court's decision reaches an eminently just result and Mr. Justice Jackson's observation in dissenting

in the Virginian Hotel case applies with greater force here than there. "The question comes simply to this: Whether the Commissioner, upon determining whether taxpayer has in good faith erred, may use a correction in so far as it helps the Government and adhere to the mistake in so far as it injures the taxpayer. I think that no straining should be done to find a construction of the statutes that will support the result."

I think the Tax Court was right and that its decision should be affirmed.