Bertrand W. COHN, Appellant,

v.

UNITED STATES of America, Appellee.

William R. KENT, Appellant,

v.

UNITED STATES of America, Appellee.

Louise C. KENT, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 13360–13362.

United States Court of Appeals
Sixth Circuit.

Sept. 26, 1958.

Myron C. Baum, Washington, D. C. (Charles K. Rice, Lee A. Jackson, Harry Baum and Sheldon I. Fink, Washington, D. C., Millsaps Fitzhugh and Edward N. Vaden, Memphis, Tenn., on the brief), for appellee.

Lewis R. Donelson, III, Memphis, Tenn. (Elwood L. Edwards, Memphis, Tenn., of counsel; Donelson & Adams, Memphis, Tenn., on the brief), for appellants.

Before SIMONS, Chief Judge, MILLER, Circuit Judge, and CECIL, District Judge.

SHACKELFORD MILLER, Jr., Circuit Judge.

The appellants, Bertrand W. Cohn, William R. Kent and Louise C. Kent, filed separate actions in the District Court against the United States of America for recovery of certain additional income taxes and interest thereon paid by them for the years 1942 through 1945, inclusive. The claims were based upon the alleged erroneous reduction by the Commissioner of Internal Revenue of certain depreciation deductions taken by the taxpayers in making their income tax returns for the years in question. Other claims on the part of the taxpayers were also made in the District Court actions, but the rulings with respect thereto are not involved in these appeals. The three actions were consolidated for hearing in the District Court. The District Judge entered separate judgments for the respective appellants which, however, by reason of his adverse ruling on the depreciation deductions, were substantially less than the appellants claimed, resulting in these three appeals. The basic facts and legal issues are the same in each case and the three appeals will, accordingly, be disposed of in this one opinion.

The material facts, about which there is no real dispute, were found by the District Judge as follows. The appellants were partners in three flying schools which were engaged in training pilots under the Army Air Corps Contract Flying School Program. These schools were (1) Pine Bluff School of Aviation at Pine Bluff, Arkansas, hereinafter referred to as "Pine Bluff School", (2) Helena Aero Tech at Helena, Arkansas, hereinafter referred to as "Helena Aero School", and (3) Clarksdale School of Aviation at Clarksdale, Mississippi, hereinafter referred to as "Clarksdale School". The contracts under which the flying schools were operated were simply memorandum agreements whereby the Army Air Corps agreed to furnish the air planes and to pay a price of $17.50 per revenue hour flying time and the contractor agreed to furnish all facilities and personnel, under the supervision of an air corps detachment, necessary for the training of Cadets. The term of the contracts was for one year or from the beginning of the school until the following June 30, whichever term was shorter, and was cancellable without cause by the Army Air Corps on 30 days notice. No assurances of renewal or extension were made.

The appellants, who were responding to an emergency request from the Air Corps, were required to provide for an initial investment of $250,000 before commencing operation of the Pine Bluff School. This operation began on March 22, 1941. In the spring of 1941 appellants William R. Kent and Bertrand W. Cohn were contacted by R. A. Van Devere in regard to commencing a similar school at Helena, Arkansas. After some discussion, they became minority limited partners in the Helena Aero School, with Van Devere as general partner. This school began operation on October 16, 1941. In the spring of 1942 the appellants and Van Devere were asked to undertake equipping and operating a third school, which was constructed by them for the Defense Plant Corporation. This school, known as the Clarksdale School, commenced training pilots on July 1, 1942.

It was necessary for the operators of the schools to furnish all the needed movable assets for the operation of the schools on an expanded basis. Investments by the different schools at the peak of their operations in such equipment

were $171,465.91 at Pine Bluff, $96,905.43 at Helena, and $92,343.77 at Clarksdale. The movable assets which made up this investment were divided into certain general classes: (a) Barracks equipment, including iron beds, linens, wooden chairs and blankets; (b) Mess hall equipment consisting of china, chairs, wooden tables and various cooking utensils; (c) Shop equipment consisting of tools and machinery; (d) A large sum invested in parachutes; (e) Fire fighting equipment of a special airport variety; (f) Ground school equipment, including maps, cutaway airplane engines and navigational instruments; (g) Office equipment, including desks, chairs, typewriters, and adding and bookkeeping machines; (h) Rolling equipment, consisting of trucks, buses, and automobiles.

In the latter part of 1942 the partners held a meeting in an effort to determine a proper method of depreciation of the movable assets of the schools during the existence of the Civilian Contract Flying Program. This meeting was also attended by the managers, bookkeepers and auditors of the three schools. Based upon a thorough investigation by the partners, including discussions with Air Corps personnel, it was finally determined that a target date of December 31, 1944, represented the reasonable maximum duration of the Civilian Contract School Program, and it was decided that the movable equipment other than the automobiles, regardless of the date of purchase, would be depreciated to this date. This method and rate of depreciation was based upon the useful economic life of the equipment in the business with the target date of December 31, 1944. Deductions for depreciation on this basis were taken by the appellants for income tax purposes for the tax years involved herein.

All of the contracts between the Air Corps and the partnerships were subject to renegotiation. The Army Renegotiation Board, consisting of representatives of the Treasury Department and the Air Corps, approved this method of computing depreciation as being a reasonable and proper operating expense under the contract and allowed the depreciation expense for renegotiation purposes.

On August 4, 1944, the Helena Aero School was terminated. On October 16, 1944, the Pine Bluff School and the Clarksdale School were terminated. Various methods of disposing of the movable equipment were considered. The partners learned that other schools had successfully auctioned this type of property. A professional auctioneer was engaged, who reconditioned the equipment, advertised the sales widely, and sold the equipment at good prices. One auction was held at Helena in August, 1944; another at Pine Bluff (including the Clarksdale School property) in November, 1944. Because of wartime shortages and price increases, the movable equipment at Pine Bluff School was sold at a net profit of $63,077.77. The equipment of the Helena Aero School was sold at a net profit of $40,207.57, and the movable equipment of the Clarksdale School was sold at a net profit of $38.631.58. Appellants reported this profit, which represented the excess of the sale price over the cost basis which remained on their books in the year of the sale, as income subject to the provisions of Sec. 117(j) of the Internal Revenue Code, 26 U.S.C.A. § 117(j), taxable as long-term capital gains.

The flight-training schools did not consider and take into account the salvage value of this movable equipment in determining the depreciation which they were claiming. Operators of similar schools determined their depreciation allowances on the basis of a salvage value equal to 10 per cent of the original cost of such equipment.

Subsequent to the filing of the Federal Income Tax Returns for the years 1942, 1943, 1944 and 1945, the Commissioner took the position that the allowable depreciation should be computed upon a basis of a useful life of ten years for ground school, shop and canteen equipment, and five years for certain other types of equipment, including automobiles, trucks, barracks furniture and fix-

tures. He, accordingly, disallowed depreciation deductions by the three schools as follows: $16,377.06 by the Pine Bluff School for 1942, $16,188.13 by the Helena Aero School for 1942, $39,028.96 by the Pine Bluff School for 1943, $23,748.48 by the Helena Aero School for 1943, $15,-270.25 by the Clarksdale School for 1943, $21,888.75 by the Pine Bluff School for 1944, $7,900.12 by the Helena Aero School for 1944, $29,611.80 by the Clarksdale School for 1944. These disallowances resulted in assessments for additional income taxes against the partners in the respective schools, which were paid. Claims for refunds were filed and denied. The present actions were then filed in the District Court.

The District Judge made the following conclusions of law: (1) The appellants in depreciating the movable equipment of the flying schools over the period of the estimated useful economic life used a reasonable and proper method under the circumstances to reflect the value of the assets; (2) The appellants failed to establish that the movable equipment of the flight-training schools did not have some salvage value which could have been estimated at the end of 1941 or during 1942, 1943, and 1944; (3) The intensification of the war effort and the growing scarcity of goods made it reasonable for the schools to expect that the movable equipment would have some salvage value at the termination of their operation; and (4) The appellants, in determining a reasonable allowance for depreciation, should have taken into account an estimated net salvage value either through a reduction in the basis or a reduction in the rate of depreciation, and, under the circumstances, a salvage value equal to 10 per cent of the original cost of all the movable equipment of the three flying schools should have been taken into account in determining the annual allowance for depreciation. He held that subject to necessary adjustments to allow for salvage value equal to 10 per cent of the original cost of the movable equipment, the appellants were entitled to a refund, and ordered that a judgment in accordance with this ruling be entered within five days.

The findings of fact, conclusions of law and order for entry of judgment were filed on February 25, 1957. However, before the entry of judgment, the United States moved the Court to make additional findings of fact and conclusions of law. The District Judge heard argument on the motion and entered an order holding in abeyance the entry of judgment pending further orders of the Court.

On May 2, 1957, the District Judge made the following additional findings of fact. The partners knew in August, 1944, when the movable equipment of the Helena Aero School was sold, the price this equipment brought and thus at the end of the fiscal year 1944, they knew the actual salvage value of said movable equipment. The same was true as to the Pine Bluff School for its fiscal year ending September 30, 1945, and the Clarksdale School for its fiscal year ending June 30, 1945, as the sale of the movable equipment at these two schools took place in November, 1944; that prior to the close of its fiscal year ending September 30, 1944, the Pine Bluff School knew by reason of the sale in August, 1944, of similar items of equipment of the Helena Aero School that the probable salvage value of the Pine Bluff School's items of movable equipment would be approximately the same as in the sale of similar assets for the Helena Aero School; that the reasonably estimable salvage value of the movable equipment of the Helena Aero School and the Pine Bluff School at the end of the fiscal years 1944 and 1945 was the actual net salvage value of such equipment; and that the same was true as to the Clarksdale School for its fiscal year ending June 30, 1945.

Based on these findings the District Judge made the following additional conclusions of law: (1) Allowable depreciation is determined in the light of conditions known to exist at the end of the tax year; (2) Depreciation deductions are to be corrected in any year when it is obvious that a fact involving useful life is in error; (3) Where the actual salvage

value of assets is known at the end of a tax year, depreciation is not allowable for that year on such assets to the extent that their book value at the beginning of the tax year is less than their actual salvage value; (4) No depreciation on the movable assets was allowable to the Helena Aero School for 1944 and to the Pine Bluff and Clarksdale Schools for the fiscal year 1945 to the extent that the actual salvage values at the end of such years were more than the book values of such equipment at the beginning of such years; (5) The actual salvage value of the movable equipment of the Pine Bluff School should be used in determining depreciation for its fiscal year ending on September 30, 1944, because it was known by reason of the prices at which similar equipment had been sold in the August, 1944, sale, that the actual salvage value resulting from the sale in November, 1944, and the reasonably estimable salvage value were the same. No depreciation on the movable equipment of this school was allowable as a deduction for the fiscal year 1944 to the extent that the salvage value which should have been used for such year was greater than the book or depreciated value of such equipment at the beginning of such year; (6) The gain or loss on the sale by the flight training schools of their movable equipment should be redetermined on the basis of the depreciation so allowed. He directed that the necessary adjustments be made in accordance with the findings and conclusions as amended. Such judgments were subsequently entered, from which these appeals were taken.

Before proceeding to the merits, we first consider appellants' contention that after the District Judge entered his original findings of fact, conclusions of law, and order for entry of judgment, he was not authorized thereafter to enter the amended findings and additional conclusions which resulted in the entry of a different judgment, adverse to appellants, from that originally ordered. It may be the rule that once the District Court has entered its judgment in a case, such judgment, although reviewable on appeal, can not be set aside by the District Court except under such conditions as are authorized by the Rules of Civil Procedure, such as Rules 50(b), 55(c), 59(a) and (d), and 60, 28 U.S.C.A. However, in our present case judgment was not entered upon the original findings and conclusions and the amendments and conclusions complained of were made before the entry of the final judgment in the District Court. Generally, when a District Court acquires jurisdiction over the parties and the subject matter of a case filed in its court, such jurisdiction continues, in the absence of statutory enactments to the contrary, until final disposition of the cause. Ward v. Todd, 13 Otto 327, 329, 26 L.Ed. 339; Gulf, Colorado & Santa Fe Railway Co. v. Muse, 109 Tex. 352, 207 S.W. 897, 4 A.L.R. 613; Davis v. Davis, 61 App.D.C. 48, 57 F.2d 414, 416; Dickey v. Turner, 6 Cir., 49 F.2d 998, 1000. Until the entry of its judgment disposing of the litigation, such court has the inherent power to correct any error of its own which it may have previously made in its handling of the case. Rule 6(c), Rules of Civil Procedure; Boaz v. Mutual Life Insurance Co., 8 Cir., 146 F.2d 321, 322. Appellants contend, however, that this general rule has been changed in so far as amended findings are concerned by Rule 52(b), Rules of Civil Procedure, which they point out has been construed as restricting such amendments to those that merely clarify the findings previously made or which are additional findings in areas which were not covered by the original findings. Matyas v. Feddish, D.C.Pa., 4 F.R.D. 385; Columbia River Packers Ass'n v. Hinton, D.C.Or., 34 F. Supp. 970, reversed on other grounds, 9 Cir., 117 F.2d 310. Those cases involved amended findings *after* entry of judgment. It is unnecessary for us to consider whether they correctly construe the rule under such circumstances. We are of the opinion that when amended findings are made *before* the entry of judgment, as in the present case, Rule 52(b) should not be so construed.

Considering the merits, it appears that the parties are in agreement about the following well settled principles governing depreciation deductions. A reasonable allowance for depreciation of property used in the production of income may be deducted from gross income. The proper allowance for such depreciation is that amount which should be set aside for the taxable year in accordance with a reasonably consistent plan (not necessarily at a uniform rate), whereby the aggregate of the amounts so set aside, plus the salvage value, will, at the end of the useful life of the depreciable property, equal the cost or other basis of the property. Useful life is the period over which the asset may reasonably be expected to be useful to the taxpayer in his trade or business or in the production of his income. Useful life is necessarily an estimate made at the time when the property is first put to its business use. Since it frequently happens that the property may still have some value when it has completed its usefulness to the business, which will be realized by the taxpayer by its sale at the end of its useful life, it is necessary that this salvage value be deducted from the cost in order to find the net amount which is to be amortized over the years the property is to be used in the business. Necessarily, salvage value is also an estimate made at the time when the asset is first subject to a depreciation allowance. Burnet v. Niagara Falls Brewing Co., 282 U.S. 648, 51 S.Ct. 262, 75 L.Ed. 594; Virginian Hotel Corporation of Lynchburg v. Helvering, 319 U.S. 523, 528, 63 S.Ct. 1260, 87 L.Ed. 1561; Mertens, Law of Federal Income Taxation, Vol. 4, Sec. 23.01, 23.04, 23.05, 23.17. If the asset is sold at a price in excess of its depreciated value, such excess is taxable in the nature of a capital gain. Sec. 117(j), Internal Revenue Code, 1939 Ed.

It results from the application of the foregoing principles that an increase in the depreciation allowance means a lower net income and a larger amount taxable as a capital gain. Since a long-term capital gain is limited to a tax of twenty-five per cent thereof, it is to the appellants' interests in this case that the depreciation deductions claimed in their returns be approved instead of being reduced as contended for by the Commissioner.

The District Judge in his original ruling applied the foregoing principles. He approved the shorter period of useful life used by the appellants and rejected the Commissioner's contention for the longer period. On the other hand, he required the appellants in computing depreciation to take into consideration the salvage value of the equipment at the end of its useful life, which the appellants had not done, and fixed this salvage value at 10 per cent of cost. This lowered to a small extent the depreciation deductions claimed by the appellants but left them in amounts much larger than fixed by the Commissioner's rulings. The appellants now acquiesce in those rulings of the District Judge. The Government has taken no appeal from the ruling on useful life. We probably would not have had the present appeal if the District Judge had not made his additional findings of fact and conclusions of law based thereon.

By his supplemental findings the District Judge materially increased the salvage value of the movable assets from 10 per cent of cost to conform to the value shown by the auction sales to actually exist. Since this increased salvage value exceeded the remaining depreciated value of the assets, the assets automatically became 100 per cent depreciated, with the necessary resulting ruling that the depreciation deductions then being claimed by the appellants were disallowed. Appellants contend that the District Judge was in error in making such increase in salvage value.

Even on this phase of the case the disagreement between the parties is limited to a narrow field. There is no disagreement about the following legal principles. It often happens that the estimated useful life of an asset is shown by the passage of years to be substantially incorrect, and in cases where at the end of any taxable year there is a clear

and convincing basis, in the light of facts reasonably known to exist at the time, for making a redetermination of the remaining useful life of the asset, such a redetermination may be made. If a redetermination is made, the depreciation is not modified for prior years, but the remaining depreciated cost is spread ratably over the new estimated remaining useful life and depreciation reductions taken accordingly for the current and succeeding years. Commissioner of Internal Revenue v. Mutual Fertilizer Co., 5 Cir., 159 F.2d 470; Commissioner of Internal Revenue v. Cleveland Adolph Mayer Realty Corp., 6 Cir., 160 F.2d 1012; Mertens, Law of Federal Income Taxation, Vol. 4, Sec. 23.47. See: The Copifyer Lithograph Corp., 12 T.C. 728.

■ The narrow issue remaining is appellants' contention that although remaining useful life may be redetermined at the end of any taxable year on the basis of facts reasonably known to exist at the end of such taxable year, it is not permissible to redetermine the estimated salvage value because of subsequent appreciation in market values. They state in their brief that "Salvage value is an estimated figure, determined at the date of acquisition of depreciable property, and mere fluctuation in market value does not justify an adjustment in this figure." Practical considerations are stated in support of this contention such as the resulting continuous changes in depreciation allowances as salvage values are adjusted from year to year according to the fluctuations up and down of market values, the appalling increase in costs to both the taxpayer and the Government in maintaining and examining a set of books reflecting such changes, and the necessity of negotiations between the taxpayer and the Internal Revenue Service for each taxpayer for each year in which depreciation is claimed. There is merit to the contention as so stated.

But the Government is not contending that salvage value should be adjusted annually in order to conform with current market values, or that it should be adjusted at all on account of "mere fluctuation in market value." In so far as this case is concerned the issue is whether salvage value can be adjusted at or near the end of the useful life of the asset when it is shown by an actual sale of the asset that there is a substantial difference between what was estimated and what it actually is. We are not concerned with mere fluctuations or with any fluctuations from year to year. On the contrary, we have a single and final adjustment in the closing of the books on the asset involved. Under such circumstances the practical difficulties urged upon us are largely nonexistent.

We still have left, however, appellants' fundamental contention that salvage value, having been determined at the time of acquisition, can not be redetermined at any time thereafter. The authorities cited by the respective parties on this exact issue are not very helpful. We are not referred to any Supreme Court ruling or case from this Circuit which decides the question. There are a number of Tax Court rulings which deal with the correctness of an original determination of salvage value by the taxpayer or the failure of the taxpayer to give any consideration to salvage value in claiming a depreciation deduction. We have a different problem here.

On the basis of the settled principles hereinabove referred to, we do not agree with appellants' contention. Depreciation involves a combination of useful life and salvage value, both estimated. If, under certain circumstances, depreciation can be reconsidered through a redetermination of useful life, it would seem logical to permit, at least at the same time, a reconsideration and redetermination of salvage value. Since a change in the depreciation allowance is not applied retroactively, such a change in the salvage value would not affect prior taxable years. In Wier Long Leaf Lumber Co., 9 T.C. 990, 998, reversed on other grounds, 5 Cir., 173 F.2d 549, the Tax Court, in discussing the method to be used in arriving at the "reasonable allowance" provided by the statute for depreciation on mill property owned by the

taxpayer, referred to "the currently ascertained" salvage value and stated, "An adjustment to correct for mistaken salvage value is no different from an adjustment of a mistaken estimate of years of use." Appellants also rely upon this case, contending that in the Court's later consideration of the depreciation allowance on automobiles it stated the rule which is now urged upon us by them. That the question with respect to the automobiles was not the same question previously considered, is shown by the Court's statement: "Granting that depreciation deductions computed in the first instance upon an assumed salvage value must be adjusted from time to time upon ascertainment of inaccuracies in that assumed value, just as adjustments are required for changes in estimates of anticipated life, * * *, that is not the question submitted."

This question was not specifically covered by the Internal Revenue Regulations under the 1939 Code but is covered by Sec. 1.167(a)–1 under the 1954 Code. Appellants state that the present Regulations are expressive of the rule as it existed under the 1939 Code. They rely upon the statement in Sec. 1.167(a)–1(c) that "Salvage value shall not be changed at any time after the determination made at the time of acquisition merely because of changes in price levels." We believe appellants fail to give due consideration to the word "merely" used therein. As pointed out above, minor fluctuations in market values from year to year should no doubt be disregarded. It should also be pointed out that immediately after the sentence relied upon, the Regulations also state: "However, if there is a redetermination of useful life under the rules of paragraph (b), salvage value may be redetermined based upon facts known at the time of such redetermination of useful life."

Appellants, in filing their actions in the District Court, put in issue the depreciation deductions claimed by them and disallowed by the Commissioner. In deciding that issue under the circumstances of this case, we are of the opinion that the District Judge was not in error as a matter of law in considering both useful life and salvage value. If so, his findings of fact with respect to salvage value are fully supported by the evidence, are not clearly erroneous, and must be sustained.

The judgments are affirmed.