Contra Costa Trucking Company (a dissolved corporation) Thomas H. Gentry, E. W. McGah and H. W. Gentry, Trustees v. Commissioner.
Contra Costa Trucking Co. v. Commissioner
Docket No. 1164-62.
United States Tax Court
T.C. Memo 1963-204; 1963 Tax Ct. Memo LEXIS 138; 22 T.C.M. (CCH) 1018; T.C.M. (RIA) 63204; July 31, 1963
*138 Alvin D. McNeil, for the petitioners. Donald G. Daiker, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in petitioner's income tax for the taxable period March 1 through November 30, 1958, in the amount of $18,738.43. The issue for decision is whether petitioner is entitled to a deduction for depreciation for the taxable period March 1, 1958, through November 30, 1958, on assets which it sold just prior to its dissolution on November 30, 1958. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioner was a California corporation, incorporated on June 5, 1953. On February 9, 1959, petitioner filed its final corporation income tax return for the period March 1, 1958, to November 30, 1958, with the district director of internal revenue at San Francisco, California. On November 13, 1958, the stockholders of petitioner approved and petitioner's directors adopted a plan of complete liquidation. Prior to its termination on November 30, 1958, petitioner kept its books and records and reported its income on the basis of a fiscal year ended February 28. Petitioner *139 was a closely held corporation. Its stock was owned by H. W. Gentry, T. H. Gentry, E. J. McGah, and the son of E. J. McGah. These same stockholders also owned the stock of Gentry Building Materials Co., Walnut Creek Asphalt Corporation, and GMG Corp.
Petitioner, Gentry Building Materials Co., Walnut Creek Asphalt Corporation, and GMG Corp. entered into negotiations with the Henry J. Kaiser Company (hereinafter referred to as Kaiser) to sell to Kaiser all of their respective operating assets. During the course of negotiations, petitioner and Kaiser caused the preparation by Marshall and Stevens, Inc. of a "Market Value Report on Land, Land Improvements, Buildings and Equipment of H. W. Gentry Co., Walnut Creek Asphalt Corporation, Contra Costa Trucking Corporation, Berkeley, Walnut Creek, Antioch, Oakland, California" as of August 1, 1958. This report was dated August 15, 1958, and a copy was transmitted to petitioner shortly after that date. On November 15, 1958, petitioner entered into a written agreement with Kaiser wherein it agreed to sell to Kaiser all of its operating assets which were particularly described in the Market Value Report. On this same day Gentry Building Materials *140 Co., Walnut Creek Asphalt Corporation, and GMG Corporation entered into similar written agreements with Kaiser, except that Gentry Building Materials Co. reserved from the sale, but leased to Kaiser a certain plant site, improvements thereon, a concrete batching plant, asphalt plant, and equipment related thereto. Petitioner's contract with Kaiser provided in part as follows: Section A-1. Trucking Co. [petitioner] hereby agrees to sell to Purchaser [Kaiser] and Purchaser agrees to purchase from Trucking Co., at the purchase price and upon the other terms and conditions set forth herein, the wet mix trucks, tractors and trailers, dump trucks, trucks, and miscellaneous automobiles more particularly described on pages 90-94 of the "Market Value Report on Land, Land Improvements, Buildings and Equipment of H. W. Gentry Co., Walnut Creek Asphalt Corporation, Contra Costa Trucking Corporation, Berkeley, Walnut Creek, Antioch, Oakland, California, dated as of August 1, 1958, prepared by Marshall and Stevens, Inc.", such Market Value Report being hereinafter referred to as the "Valuation Report"; excluding, however, the following described vehicles: * * *
Section B-1. Subject *141 to adjustment as hereinafter provided in this Article B, the purchase price for the Trucking Co. Assets shall be $295,900, payable as follows: * * * Section B-2. The purchase price for the Trucking Co. Assets is computed upon the assumption that Trucking Co. will sell and Purchaser will purchase all of the motor vehicles referred to in Section A-1. In the event any one or more of such motor vehicles for any reason shall prior to the Closing Date have been destroyed, abandoned, sold, hypothecated, or otherwise disposed of by Trucking Co., or for any other reason cannot be transferred by Trucking Co. to Purchaser on the Closing Date, then the applicable purchase price for the Trucking Co. Assets set forth in Section B-1 shall be reduced by the appraised value of such motor vehicle or vehicles, as set forth in the Valuation Report. ARTICLE C. CLOSING. Section C-1. The sale and purchase of the Trucking Co. Assets shall occur on the Closing Date. The Closing Date shall be 9:00 A.M., November 24, 1958, or such later date as the parties may mutually agree upon. Section C-2. On the Closing Date the following acts and events shall occur as conditions precedent to closing: *142 (a) Trucking Co. shall deliver to Purchaser at 1924 Broadway, Oakland 12, California: (i) Such assignments, bills of sale, certificates of title, releases and other instruments, in form and substance satisfactory to Purchaser, as are necessary in the opinion of counsel for Purchaser to vest title in the Trucking Co. Assets in Purchaser free and clear of all liens and encumbrances, except only the lien of the obligations referred to in Section A-1. (ii) An assignment of all good will of Trucking Co. as a going concern, including all rights in the name "Contra Costa Trucking" in connection with the Ready-Mix Concrete business and Asphalt business, together with all records, customers lists, and correspondence pertaining thereto. (iii) Such certificates, corporate resolutions, and other written evidence as counsel for Purchaser may require to evidence compliance by Trucking Co. with the provisions of Section 3901 of the Corporations Code of the State of California. (b). H. W. Gentry Building Materials Co. and Walnut Creek Asphalt Corporation shall perform the obligations and comply with the conditions to which they are subject on the Closing Date under and pursuant to the provisions *143 of two Agreements of even date under which Purchaser is acquiring certain of the assets of such corporations. Section C-3. On the Closing Date and upon the occurrence of all the conditions precedent to closing pursuant to this Agreement, Purchaser shall deliver to Trucking Co. the following: (a) Certified check in the amount of $45,803.43. (b) An assumption of the obligations of Trucking Co. in the amount of $69,096.57 being specifically assumed by Purchaser hereunder. (c) As consideration for the assignment of good will required by Section C-2(a)(ii), the sum of One Dollar in cash. (d) Certified check in the amount of $11,836, representing reimbursement by Purchaser to Trucking Co. of the state and local sales and use taxes applicable to this transaction, and Purchaser shall have no obligation or liability in connection therewith and Trucking Co. shall hold Purchaser free and harmless from and against any and all such taxes. Section C-4. All deliveries on the Closing Date required or provided for by this Article C shall be deemed made simultaneously and such deliveries shall be deemed in escrow until all such deliveries have been made. The following schedule shows *144 the receipts by petitioner, Gentry Building Materials Co., Walnut Creek Asphalt Corporation, and GMG Corporation from Kaiser and the gain of each of these corporations on the sale as shown by their books: Gentry
Walnut Creek
Building
Asphalt
GMG
Petitioner
Materials
Corporation
Corporation
Co.
Totals
Cash received from Kaiser
$ 43,153.43
$ 18,448.93
$ 5,500.00
$ 67,102.36
Contracts payable assumed
by
Kaiser
69,096.57
5,646.07
74,742.64
Deferred contract
181,000.00
80,425.00
22,000.00
$3,500.00
balances
286,925.00
Total price paid by
293,250.00
104,520.00
27,500.00
3,500.00
Kaiser
428,770.00
Less - Cost of sale
3,223.60
3,223.60
Net sales price
293,250.00
101,296.40
27,500.00
3,500.00
425,546.40
Deduct cost of assets
sold to Kaiser
Original cost of assets
$417,626.80
$159,105.22
$35,466.11
$5,848.20
$618,046.33
Less - depreciation taken
[1] 273,548.35
94,243.17
13,654.71
4,191.21
385,637.44
Net book value of assets
144,078.45
64,862.05
21,811.40
1,656.99
sold
232,408.89
Gain on sale
$149,171.55
$ 36,434.35
$ 5,688.60
$1,843.01
$193,137.51
*145 The total book value of the vehicles sold by petitioner to Kaiser as of March 1, 1958, was $189,547.65 after taking into consideration depreciation allowed to February 28, 1958. The appraised value of the wet mix trucks, tractors, trailers, dump trucks and automobiles owned by petitioner as shown in the Marshall and Stevens Market Value Report was $303,210. [1] Certain of the items shown in that report were eliminated from the contract of November 15, 1958, and the remaining items were sold by petitioner to Kaiser on November 24, 1958, at the appraised price of this report which totaled $293,250. Following the acquisition of petitioner's assets, Kaiser recorded them on its books in the amounts set out as market value in the Marshall and Stevens report, plus the 4 percent California sales tax paid by Kaiser. *146 At the present time Kaiser owns all of the vehicles that it acquired from petitioner and is operating all but four of them. The four not being operated have either been wrecked or have worn out. Petitioner and Kaiser for a number of years prior to 1958 had been friendly business associates. During the preparation of the Marshall and Stevens appraisal report, a representative of Kaiser instructed the appraiser not to establish value on the basis of scrap value since it was Kaiser's intention because of the friendly business association over a number of years to pay a fair value for petitioner's property and not an amount based upon distressed values. Kaiser upon receipt of the Marshall and Stevens valuation report had it checked by a longtime employee and reviewed by its vice president and general manager of its sand and gravel division. The latter advised Kaiser that in his opinion most of the appraised values were substantially correct but that some of the values might be too high. Petitioner on its final corporate income tax return for the taxable period March 1, 1958 to November 30, 1958, claimed a depreciation deduction of $47,635.98 which included $45,469.20 applicable *147 to the vehicle which it had sold to Kaiser. On this return petitioner reported a gain on the sale of this equipment of $149,171.55 which resulted from deducting from a sales price of $293,250, a remaining cost basis which it arrived at by subtracting from cost of $417,626.80 depreciation allowed of $273,548.35 which amount of depreciation included the $45,469.20 of depreciation claimed for the period March 1, 1958 to November 30, 1958. Petitioner on its corporate income tax return for the taxable period March 1, 1958 to November 30, 1958, showed as an adjustment for tax purposes an elimination of the gain of $149,171.55 on sale of the equipment made subsequent to the date of adoption of the plan of dissolution. Respondent in his notice of deficiency disallowed the depreciation deduction of $47,635.98 claimed by petitioner with the following explanation: It is held an asset shall not be depreciated below a reasonable salvage value. Since the depreciable assets sold in the taxable year ended November 30, 1958 were sold for prices exceeding the remaining cost basis at the beginning of the taxable year, the depreciation claimed is held to be in excess of the proper amount allowable. *148 Depreciation deduction claimed in the amount of $47,635.98 has therefore been disallowed. Opinion It is respondent's position that as of the end of petitioner's taxable period March 1, 1958, to November 30, 1958, the salvage value of petitioner's assets was in excess of their book value and therefore under the decision in Cohn v. United States, 259 F. 2d 371 (C.A. 6, 1958), and our decision in Randolph D. Rouse, 39 T.C. 70, 77 (1962), petitioner is not entitled to a depreciation deduction in this fiscal period. Petitioner takes the position that Cohn v. United States, supra, and Randolph D. Rouse, supra, are not applicable to the instant case since those cases involved the sale of specific assets for a specified amount whereas in the instant case a proper interpretation of its agreement with Kaiser is that it sold to Kaiser for $293,250 its total business operations as distinguished merely from its physical vehicles. Petitioner contends that under this interpretation of its contract of sale, Cohn v. United States, supra, and Randolph D. Rouse, supra, are not applicable. Petitioner relies on Wasmer *149 v. United States, an unreported case ( E.D. Wash., 1962, 10 A.F.T.R. 2d 6162, 63-1U.S.T.C. par. 9134). Petitioner offered testimony to show that it transferred to Kaiser uncompleted contracts which Kaiser was to complete, which in the judgment of petitioner's officers had a value or potential net profit to Kaiser of approximately $79,200. The officials of Kaiser looked upon the assumption of the obligation to perform petitioner's uncompleted contracts as an obligation which it hoped to discharge without loss but did not anticipate would result in a profit. We conclude that petitioner's contract with Kaiser provided for payment of the $293,250 for the purchase of the vehicles and that this amount was paid by Kaiser to petitioner for the vehicles. The goodwill and going concern value transferred by petitioner to Kaiser for $1 have not been shown to have any value. Under these circumstances (except for the three vehicles with respect to which the appraised value was less than the book value at March 1, 1958), [2] the following statement in Randolph D. Rouse, supra, is applicable. *150 During each of the taxable years petitioner sold houses theretofore held by him for rent at prices in excess of their undepreciated costs as of the first of such years. Thus it was apparent with regard to each house thus sold and a condition "known to exist at the end of the period for which the return is made" that its salvage value during the year of sale was in excess of its undepreciated cost as of that year. Accordingly, no depreciation deduction is allowable on account of a home thus sold for the taxable year during which it was sold. Cohn v. United States, 259 F. 2d 371. Even if petitioner's contract with Kaiser were to be interpreted in accordance with petitioner's contention as being an overall sale of its business for $293,250, petitioner has not shown that the portion of the purchase price paid for the vehicles on which it claimed depreciation for the period ended November 30, 1958, was not equal to or in excess of the book value of these assets on March 1, 1958. Petitioner in its brief requests a finding that "at the time Kaiser acquired petitioner's assets the same had a fair market value of $193,350." Appendix A to petitioner's brief lists certain of *151 its assets with respect to which its expert witness, Ralph Blanchard, testified. This list shows a total book value of the vehicles listed thereon of $139,099.14 and a fair market value in the opinion of Blanchard for such vehicles totaling $183,800. On the list ahe only four items, the book value of which is in excess of the amount Blanchard stated to be in his opinion the fair market value of such vehicles. The book value as listed in petitioner's Appendix A to its brief is apparently book value after deducting the depreciation with respect to the vehicles claimed by petitioner for the period March 1, 1958, to November 30, 1958, but if the portion of the $45,469.20 of depreciation claimed by petitioner for the period ended November 30, 1958, applicable to the vehicles on this list were added to the book value shown thereon, the total book value of these vehicles as of March 1, 1958, would be less than Blanchard's opinion of their total fair market value. In the case of Wasmer v. United States, supra, relied on by petitioner, the Court made a finding that "the salvage value of the plaintiff's depreciable assets was at all times during the year 1957 [the year there involved] less *152 than the book value of such assets." In its opinion the Court stated: The actual value of depreciable assets is found to be less than book value as of January 1, 1957 and the disallowed depreciation is reinstated. * * * The Court in Wasmer v. United States, supra, distinguished Cohn v. United States, supra, and in so doing stated: If the items of depreciable property and no other had been sold at a specified price Cohn would apply. It is applied to the extent that actual value is salvage value. Book value is to be disregarded if less than actual value. In the instant case the actual value of petitioner's vehicles as of March 1, 1958, has not been shown to be less than their book value. This fact distinguishes the instant case from the Wasmer case. The physical useful life of the vehicles sold by petitioner in 1958 did not end in that year. These vehicles were used by Kaiser in its business after Kaiser acquired them from petitioner. Nevertheless, in 1958 these vehicles were at the end of their useful life in petitioner's business since petitioner sold them. This is exactly the same situation as that present in Cohn v. United States, supra.In the Cohn *153 case the Court considered the salvage value to be shown by the sale price in the year of sale. On the basis of the Cohn case and Randolph D. Rouse, supra, we sustain respondent's disallowance of the depreciation deduction claimed by petitioner. Decision will be entered for respondent. Footnotes
1. Including depreciation claimed for the period March 1, 1958, to November 30, 1958, the subject matter of this case.↩
1. On the individual items appraised only three showed an appraised value less than their book value, these three items being wet mix truck No. 55, book value March 1, 1958, $14,127.57, appraised value $13,000; tractor No. 155, book value March 1, 1958, $15,891.20, appraised value $15,600; and trailer No. 155-T, book value March 1, 1958, $10,069.28, appraised value $9,500.↩
2. Petitioner makes no claim in the alternative or otherwise that depreciation should be allowed as to these vehicles only.↩