CARL FREDRICKS AND BETTE B. FREDRICKS, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Fredricks v. Commissioner
Docket Nos. 17169-80, 17170-80, 15954-81.
United States Tax Court
T.C. Memo 1983-725; 1983 Tax Ct. Memo LEXIS 67; 47 T.C.M. (CCH) 523; T.C.M. (RIA) 83725; December 5, 1983. *68 Carl Fredricks, for the petitioners. Mitchell S. Fuerst, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined deficiencies in the income tax due from the petitioners as follows: Docket No.
Year
Deficiency
Carl Fredricks and
17169-80
1975
$18,238
Bette B. Fredricks
1976
26,432
1977
34,915
Gordon T. Fredricks and
17170-80
1975
1,800
Karen S. Fredricks
1976
1,131
1977
5,771
Michael G. Fredricks and
15954-81
1977
21,973
Gail B. Fredricks
These cases were consolidated for purposes of trial, briefing and opinion. The only issue for our decision is whether the petitioners are entitled to investment credits for property purchased by their partnerships and leased to third parties. FINDINGS OF FACT These cases were submitted fully stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by reference. Petitioners, Carl and Bette B. Fredricks, as well as Gordon T. and Karen S. Fredricks, resided in Florida when they filed their petitions herein. Petitioners Michael G. and Gail B. Fredricks resided *69 in Maryland at the time they filed their petition in this case. During 1975, 1976 and 1977, petitioners Carl, Bette, Michael and Gordon Fredricks owned the following interests in a general partnership known as BC Leasing Associates, with offices in Kensington, Maryland (the Maryland partnership): Percentage
Interest
Carl Fredricks
26%
Bette Fredricks
26%
Michael Fredricks
42%
Gordon Fredricks
3%
Total
97%
During 1975 and 1976, Carl and Gordon Fredricks each owned a 25 percent interest in a general partnership known as Nebraska BC Leasing Associates, with offices in Omaha, Nebraska (the Nebraska partnership). During a part of 1976 and all of 1977, Gordon Fredricks owned a 70 percent interest in a general partnership known as BC Leasing Associates, with offices in Pompano Beach, Florida (the Florida partnership). All three of the above partnerships were engaged in the trade or business of leasing personal property such as office machines, furniture, automobiles, photocopiers, electric printers, telephone systems and other equipment to customers for periods of up to seven years. The partnerships did not manufacture or produce the personal property *70 but purchased it new for lease to a customer at the customer's specific request. The leases were for fixed periods of time, the average being from three to five years, and were identical in all material respects except for the provision dealing with the applicable state law. After the initial term, a lease was automatically renewable for each year thereafter for a fee of five percent of the original cost of the equipment plus local taxes and certain charges existing at the time of the renewal. In practice, however, the partnerships sold the leased property at the end of the initial term either to the lessee or to a third party. Under each lease the lessee was responsible for insurance, taxes, and repairs on the leased property. The lessee also bore the risk of loss from theft, damage or destruction of the property. For each of the years in issue, the partnerships used the straight line method for claiming depreciation deductions on the property leased to their customers. If a lease was for three years or less, a life of three years was used for depreciation; but if the lease term was in excess of three years, the life used was the term of the lease. The parties agree, however, *71 that the actual economic useful life of each piece of leased property was at least twice the term of the lease on such property. No investment credit was claimed by the partnerships on equipment covered by leases with terms of less than three years, and when requested by the lessees, the partnerships also permitted the investment credit to be claimed by the lessees on equipment covered by leases of more than three years. During the taxable years in issue, each partnership purchased new equipment and machines on which investment credits were claimed. The amount of investment in new property and the useful life determined by each partnership for such property were as follows: The Maryland Partnership
Taxable Year Ended
3-5 Years
5-7 Years
7 or More Years
October 31, 1975
$286,066
$447,196
$167,262
October 31, 1976
759,769
645,026
153,089
October 31, 1977
1,098,439
790,955
128,080
The Nebraska Partnership
December 31, 1975
$ 98,977
$ 66,871
December 31, 1976
189,689
62,370
December 31, 1977
161,801
74,150
The Florida Partnership
December 31, 1976
$ 21,163
$ 30,101
December 31, 1977
128,609
73,543
Each year *72 each partnership issued a Schedule K-1 to each partner on which it reported its cost of new investment property for the purpose of passing through to the partner his or her share of the investment credit applicable to such property. On their individual income tax returns, the petitioners claimed the following total amounts of investment credit for the taxable years in issue with respect to the investment properties acquired by the three partnerships: Carl & Bette
Gordon & Karen
Michael & Gail
Taxable Year
Fredricks
Fredricks
Fredricks
1975
$18,238
$1,800
1976
28,051
1,131
1977
34,915
5,771
21,973
In his notices of deficiency, respondent disallowed the claimed investment credits in their entirety. The parties have stipulated that for the first twelve months after the date on which each of the three partnerships leased property to lessees, the sum of allowable deductions to the lessors on the property under section 162 [2] (other than rents and reimbursed amounts) exceeded 15 percent of the rental income produced by such property during all relevant taxable periods of the partnerships. *73 OPINION Section 46(e)(3) provides that a noncorporate lessor is entitled to an investment credit for leased property if (1) the lessor manufactured or produced the property, or (2) the term of the lease, including options to renew, is less than 50 percent of the useful life of the property, and for the first year of the lease, dedeuctions allowable under section 162, other than rents and reimbursed amounts, exceed 15 percent of the rental income produced by the property. [3] See sections 1.46-4(d)(1)(ii) and 1.46-4(d)(3)(ii), Income Tax Regs. The parties have stipulated that petitioners did not manufacture the property leased by the partnerships. They have also stipulated that the partnerships satisfied the 15 percent test. Therefore, the only question remaining for our decision is whether the lease terms, including options to renew, were less than 50 percent of the useful life of the leased equipment as required by section 46(e)(3)(B). See generally Ridder v. Commissioner,76 T.C. 867 (1981).
*74 In this determination the "useful life" to be used is that assigned to the leased property for depreciation purposes. Section 46(c)(2). The useful life of property for depreciation purposes is the period it is reasonably expected to be useful to the taxpayer in his trade or business. Massey Motors, Inc. v. United States,364 U.S. 92 (1960). Section 1.167(a)-1(b), Income Tax Regs. When leased property is disposed of at the end of a lease term, it has been held that the useful life for depreciation purposes is limited to the life of the asset in the lessor's hands rather than its economic life. Hertz Corporation v. United States,364 U.S. 122 (1960); Cohn v. United States,259 F.2d 371 (6th Cir. 1958). For depreciation purposes the useful life assigned by the partnerships to property they purchased for leasing was always equivalent to the term of the lease on the property. [4] Consequently, in each case the lease term was 100 percent of the useful life assigned to the asset for depreciation purposes. As a result, the petitioners are unable to satisfy the 50 percent requirement of section 46(e)(3)(B). *75 Petitioners, however, point out that in this case the economic life of the leased property is more than twice the useful life assigned to it for depreciation purposes and argue that for investment credit purposes we should not use the depreciable life. We cannot agree because this argument is directly contrary to section 46(c)(2) which clearly states: For purposes of [the investment credit] the useful life of any property shall be the useful life used in computing the allowance for depreciation under section 167 for the taxable year in which the property is placed in service. See also sections 1.46-3(e)(3)(i) and 1.167(a)-1(b), Income Tax Regs. See also H. Rept. No. 92-533 (1971), 1972-1 C.B. 498, 533; S. Rept. No. 92-437 (1971), 1972-1 C.B. 559, 583. Petitioners further contend that they fall within the intent of section 46(e)(3)(B) because they are actively engaged in the trade or business of leasing. In response to a similar argument in Carlson v. Commissioner,79 T.C. 215, 224-225 (1982), affd. 712 F.2d 1314 (9th Cir. 1983), we stated: Section 46(e)(3) unambiguously sets out certain alternative criteria that *76 noncorporate lessors must satisfy to be entitled to the investment credit. It contains no indication that an exception will be made in the case of a taxpayer who fails to meet those criteria if he had valid business reasons for entering into a leasing transaction. Under these circumstances, the presence or absence of valid business reasons of petitioner for entering into the leasing transaction in question is wholly irrelevant. [Citations omitted.] Here too the petitioners must fail because they cannot meet the technical requirements of section 46(e)(3)(B). Petitioners next ask our permission to elect a new depreciation schedule as part of a Rule 155 computation in order to qualify for the investment credit. This issue was raised for the first time on brief and therefore is untimely and cannot be considered by us. Markwardt v. Commissioner,64 T.C. 989, 997-998 (1975); Estate of Horvath v. Commissioner,59 T.C. 551 (1973). Nevertheless, we feel constrained to point out that such a change may constitute a change in the method of accounting and require the approval of the respondent. Section 1.167(e)-1(a), Income Tax Regs.There is nothing in *77 the record which tends to establish that such approval was sought or given. Thus, no change, would be allowable absent the required consent. Wildman v. Commissioner,78 T.C. 943 (1982). We further note that such a request would properly come from the partnerships and not petitioners who own less than 100 percent of each partnership. Finally, petitioners request that they be permitted to carry back unused investment credits for 1978, a year which may be barred by the statute of limitations, and apply them to the years under consideration. Again, this issue was raised for the first time on brief and unfortunately cannot be considered by us. Decisions will be entered under Rule 155.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Gordon T. Fredricks and Karen S. Fredricks, Docket No. 17170-80; and Michael G. Fredricks and Gail B. Fredricks, Docket No. 15954-81.↩
2. All section references are to the Internal Revenue Code of 1954, as amended, during the years in issue.↩
3. The relevant part of section 46(e)(3) is as follows: (3) NONCORPORATE LESSORS.--A credit shall be allowed by section 38 to a person which is not a corporation with respect to property of which such person is the lessor only if-- (A) the property subject to the lease has been manufactured or produced by the lessor, or (B) the term of the lease (taking into account options to renew) is less than 50 percent of the useful life of the property, and for the period consisting of the first 12 months after the date on which the property is transferred to the lessee the sum of the deductions with respect to such property which are allowable to the lessor solely by reason of section 162 (other than rents and reimbursed amounts with respect to such property) exceeds 15 percent of the rental income produced by such property.↩
4. This was true only with respect to leases of three years or more but the partnerships did not claim investment credit on property leased for fewer than three years.↩