SMITH LEASING CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 91887. Filed October 20, 1964.

*Charles Cleveland,* for the petitioner.
*Homer F. Benson,* for the respondent.

DRENNEN, *Judge:* Respondent determined a deficiency in petitioner's income tax for the calendar year 1958 in the amount of $23,781.50.

The issues for decision are: (1) Whether petitioner may deduct the cost of certain supplies purchased during the taxable year 1958, (2)

whether petitioner is entitled to deduct the expenses incurred in the operation of two automobiles, and (3) whether petitioner is entitled to a deduction for depreciation on certain assets used in its business during the year 1958 where the prices it received on the sale of those assets on January 2, 1959, in connection with a sale of all the corporate assets, were in excess of his adjusted cost basis in those assets.

Other issues raised in the notice of deficiency have been disposed of by stipulation of the parties.

### GENERAL FINDINGS OF FACT

The stipulated facts are incorporated herein by reference.

Smith Leasing Co., Inc. (formerly W. L. Smith Poultry Co., of Sylacauga, Ala.), hereinafter referred to as petitioner, was organized under the laws of the State of Alabama on January 4, 1957. It filed a Federal corporation income tax return for the calendar year 1958 with the district director at Birmingham, Ala.

In March 1956, A. J. Smith and his brother, W. L. Smith, Jr., formed a partnership, known as Smith Trucking Co., hereinafter referred to as the partnership, for the purpose of engaging in the business of owning and leasing trucking equipment. The partnership engaged in that business during the remainder of 1956 and all of the calendar year 1957 and in the course thereof it purchased various pieces of equipment, including trucks, trailers, and tractors, parts therefor, supplies, and fuel.

On January 2, 1958, the partners reorganized the business by transferring all of its assets to petitioner in exchange for its capital stock. This transfer was a nontaxable exchange pursuant to section 351 of the Internal Revenue Code of 1954.[1] From its inception, A. J. and W. L. Smith owned all the stock of petitioner equally, and both were officers thereof, the former its president and the latter its secretary-treasurer.

Petitioner continued the operation of the truck-leasing business during 1958 in the same manner it had been conducted by the partnership, using the same location, retaining the same customers, and putting its equipment to the same use. On January 2, 1959, petitioner's stockholders formally adopted a plan of complete liquidation and dissolution of the corporation, which involved a sale of all its assets and was intended to comply with section 337 for nonrecognition of gain to the corporation on the sale. Pursuant thereto, it sold all of its assets, with the exception of cash or its equivalent, to Smith's Pride, Inc., on January 2, 1959. The following is an excerpt from the minutes of the joint meeting of the stockholders and directors of petitioner held on January 2, 1959:

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.

1. As soon as practical after the adoption of this plan, the corporation shall sell substantially all of the assets of the corporation to Smith's Pride, Inc., upon the assumption by Smith's Pride, Inc., of all of the liabilities of the corporation as of January 1, 1959, and for a purchase price equal to the appraised value of said net assets, but not less than One Hundred Thousand Dollars ($100,000.00), to be paid in such manner as shall be approved by the president of the corporation. A. J. Smith, the president of the corporation is hereby authorized and directed to execute a bill of sale and agreement, setting forth the terms of said sale, on behalf of the corporation and as an act of the corporation, and all other instruments necessary or desirable to effectuate said conveyance.

The transaction involving the sale of petitioner's assets, and the sales price thereof, was negotiated over a period of time by representatives of petitioner and the purchaser and was an arm's-length transaction consummated in good faith. A specific sales price was agreed upon and fixed for each of the individual assets sold. After the sale was consummated petitioner ceased active business operations and was dissolved on May 29, 1959.

## Issue 1. Supplies

### FINDINGS OF FACT

Petitioner kept its books and records generally on the accrual method. Petitioner kept no inventories of various supplies, such as gasoline, tires and tubes, and replacement parts, but generally charged the cost of such items directly to expense either in the month the purchase was made or in the following month in which payment was made. Petitioner issued checks totaling approximately $26,000 in payment for such supplies in January and early February 1959 which petitioner charged to expense in 1958. Petitioner did not make excessive or unreasonable purchases of such supplies in 1958. All the supplies so purchased were for use in petitioner's business and were not held for sale to customers in the ordinary course of petitioner's business. Petitioner was not in a business in which the production, purchase, or sale of merchandise was an income-producing factor.

Upon the aforementioned sale of petitioner's business in 1959, the following items of supplies were sold to the purchaser at the prices indicated:

| | |
|---|---:|
| Gasoline | $1,228.77 |
| Tires, tubes (new and recap) | 15,180.33 |
| Grease and oil | 502.05 |
| Purchase order forms | 190.55 |
| File cabinet | 6.15 |
| Parts and shop supplies | 3,018.29 |
| Total | 20,126.14 |

In its income tax return for 1958, petitioner reported gross income

in the amount of $295,946.65. It claimed deductions for the following expenses:

| | |
|---|---|
| Truck and auto expense | $83,912.83 |
| Tires and tubes | 24,926.50 |
| Repairs and maintenance of trucks | 52,834.80 |

The total cost of supplies and parts purchased by petitioner during 1958 was included in the above-claimed deductions. In his notice of deficiency, respondent disallowed $20,126.14 of the above-claimed deductions by setting up a closing inventory of the supplies on hand at the end of 1958, which petitioner sold to Smith's Pride, Inc., at that price.

### OPINION

The issue is whether respondent erred in disallowing as a deduction in 1958 a part of the amounts petitioner paid or accrued in 1958 for various parts and supplies it had on hand at the end of that year. We conclude that he did.

Section 471 of the Code provides generally that whenever in the opinion of the Secretary or his delegate the use of inventories is necessary to determine the income of any taxpayer, inventories shall be taken on a basis conforming to the best accounting practice in the trade or business and most clearly reflecting income. Section 446 provides generally that taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes income in keeping his books; and prescribes several accepted methods, including the cash receipts and disbursements method, the accrual method, or any combination thereof permitted under regulations prescribed by the Secretary or his delegate.

Inventories of supplies are not usually used or required in computing income when the supplies are not acquired for sale or to be included physically as a part of merchandise intended for sale. Section 1.471-1, Income Tax Regs., provides in part as follows:

> In order to reflect taxable income correctly, inventories at the beginning and end of each taxable year are necessary in every case in which the production, purchase, or sale of merchandise is an income-producing factor. The inventory should include all finished or partly finished goods and, in the case of raw materials and supplies, only those which have been acquired for sale or which will physically become a part of merchandise intended for sale * * *

The supplies here involved were not purchased for sale; and in keeping its books and records and computing its income therefrom petitioner did not keep an inventory of its supplies, but charged them directly to expense as they were purchased. If consistently followed, this method of computing petitioner's income would appear to conform to respondent's regulations and correctly reflect petitioner's income. There is no indication in this record that petitioner purchased

an excessive or abnormal amount of supplies in 1958 to offset a deduction from normal income with a capital gain on the sale thereof. Compare *David Baird & Sons, Inc.*, 2 B.T.A. 901 (1925).

But respondent, in support of his determination on this issue, argues that setting up a closing inventory of supplies in this case is necessary to prevent a "double deduction." We are not sure just what double deduction respondent has allusion to. So far as we can determine, petitioner or its predecessor partnership deducted the cost of these supplies only once. So far as we know, petitioner claimed no basis in supplies it might have acquired in the tax-free exchange from the partnership—and such a basis would be of no tax benefit to petitioner on the sale of these supplies in 1959 anyway because presumably no gain or loss was recognized to the corporation on that transaction under section 337. In any event if the second deduction is somehow related to the sale of petitioner's assets in 1959, suffice it to say that neither petitioner's taxable year 1959 nor that of its stockholders is before us.

On brief respondent states that the deduction was denied for the reason that petitioner's records did not show an opening inventory and for the further reason that if petitioner had an opening inventory it was acquired in a nontaxable transfer and the cost of such inventory had been deducted by the partnership, citing section 1.162–3, Income Tax Regs. The answer to this is that under its method of accounting for supplies petitioner did not keep an inventory of supplies but charged them directly to expense when they were purchased, which, as we have previously noted, it was permitted to do under respondent's regulations.

Section 1.162–3, Income Tax Regs., relied on by respondent, provides as follows:

Taxpayers carrying materials and supplies on hand should include in expenses the charges for materials and supplies only in the amount that they are actually consumed and used in operation during the taxable year for which the return is made, provided that the costs of such materials and supplies have not been deducted in determining the net income or loss or taxable income for any previous year. If a taxpayer carries incidental materials or supplies on hand for which no record of consumption is kept or of which physical inventories at the beginning and end of the year are not taken, it will be permissible for the taxpayer to include in his expenses and to deduct from gross income the total cost of such supplies and materials as were purchased during the taxable year for which the return is made, provided the taxable income is clearly reflected by this method.

The last sentence of the above-quoted regulation seems to us to support petitioner's position rather than respondent's position, particularly when read in conjunction with section 1.471–1 of the regulations previously quoted.

Respondent argues that petitioner did not carry its burden of proving that the cost of the supplies listed in the bill of sale, which

petitioner claimed as a deduction in computing its "gain," had not already been deducted either by the partnership in the prior year or by the petitioner in the current year. As we understand it, both parties acknowledge that the partnership deducted the cost of supplies purchased by it and that the petitioner deducted the cost of supplies purchased by it in 1958. Neither petitioner's tax return for 1958 nor its books reflect an opening inventory of supplies, to which respondent agrees, and there is no suggestion in the notice of deficiency or elsewhere in the record that petitioner claimed as a deduction more than the cost of the supplies it purchased in 1958. Under the circumstances we do not think it was incumbent upon petitioner to prove affirmatively that none of the supplies it had on hand at the end of the year 1958 had been paid for and the cost thereof deducted by the partnership. And, of course, both petitioner and respondent, in his notice of deficiency, assert that the cost of the supplies on hand at the end of 1958 which were sold to Smith's Pride, Inc., had been deducted by petitioner for the year 1958. This argument does not support respondent's determination.

We believe respondent's use of the word "gain" is indicative of the basic reason for respondent's determination setting up a closing inventory for supplies, being to prevent petitioner from first deducting the cost of these supplies against ordinary income in 1958 and them claiming the cost thereof as a deduction in computing the gain on the sale of its assets to Smith's Pride, Inc. The fallacy of this reasoning is that respondent should not attempt to upset petitioner's method of accounting for the cost of its supplies if that method correctly reflects income for 1958 because of his fear that petitioner will gain an advantage from it in 1959. If petitioner, or its stockholders, did in some way claim the cost of these supplies as a deduction in computing gain on the sale of petitioner's assets, or gain on liquidation of the corporation, in 1959, respondent's attack should be directed there, not here. And if petitioner did in some way gain an advantage by virtue of liquidating under section 337, that is a matter for Congress, not the courts, to correct.

We conclude that respondent erred in disallowing the deduction. For this reason it is unnecessary for us to consider petitioner's alternative argument that if a closing inventory of supplies is set up an opening inventory must be allowed too.

### Issue 2.  Automobile Expense

#### FINDINGS OF FACT

Petitioner owned two automobiles which it leased in 1958 to a "poultry business" in which A. J. and W. L. Smith were also engaged. One of these automobiles, a Chrysler, was used by A. J. Smith, president of petitioner, 95 percent of the time on petitioner's business or in

furtherance of petitioner's business. A. J. Smith owned another automobile which he used for nonbusiness purposes.

Petitioner claimed a deduction of $800 for automobile expense for the year 1958, $400 of which was attributable to the automobile used by A. J. Smith and the remaining $400 of which was apparently attributable to the automobile used by W. L. Smith. Respondent disallowed the entire $800 claimed on the ground that it did not constitute an ordinary and necessary business expense of petitioner.

OPINION

No evidence was presented with respect to the expenditures attributable to the automobile used by W. L. Smith and, on brief, petitioner concedes that this $400 item should be disallowed.

We were convinced by the testimony of A. J. Smith that at least 95 percent of his use of the Chrysler automobile was on business for petitioner or in furtherance thereof. There was no evidence to contradict his testimony. This issue involves a question of fact which we must determine on the evidence presented. Accordingly, we have found as a fact that 95 percent of the use of the Chrysler automobile was on petitioner's business or in furtherance thereof. That part of the cost attributable to the use of that automobile was an ordinary and necessary business expense of petitioner. We conclude that petitioner is entitled to deduct $380 of the $800 of automobile expense disallowed by respondent.

*Issue 3*

FINDINGS OF FACT

During the year 1958 petitioner owned various trucks, trailers, and tractors which were leased to its customers in the regular course of its business. Some of this equipment was acquired by petitioner from the partnership on January 2, 1958, and the remainder of it was purchased during the year 1958.

Some of the equipment acquired from the partnership had been depreciated by it on the straight-line method and other pieces on the declining-balance method. However, upon its acquisition by petitioner, all such equipment was depreciated by petitioner on the straight-line method. With respect to the equipment the partnership had depreciated on the straight-line method, petitioner adopted the adjusted bases, the useful lives, and the salvage values reflected on the partnership books at the date of transfer. Some of the useful lives and salvage values so adopted had been established by an agent of respondent in examining the partnership information return for 1956. With respect to the equipment which the partnership had depreciated on the declining-balance method and consequently had set up no salvage value, petitioner's accountant and officers made an estimate, at the

beginning of 1958 when the equipment was acquired by petitioner, of the proper useful lives and salvage values to be used by petitioner in depreciating this equipment on the straight-line method. These estimates were used by petitioner in computing depreciation on this equipment on its tax return for 1958.

Used equipment purchased by petitioner during 1958 was depreciated on the straight-line method and the useful lives and salvage values computed thereon were similar to those used on similar equipment acquired from the partnership. On new equipment which was purchased by it during 1958, petitioner employed the declining-balance method for computing depreciation and established useful lives similar to those employed by the partnership in depreciating new equipment.

None of the equipment so acquired by petitioner became fully depreciated during 1958. Some pieces of equipment were traded in during the year and two pieces were sold on which a net gain of $273.74 was realized. All of this equipment which was owned by petitioner at the end of the year 1958 was sold to Smith's Pride, Inc., on January 2, 1959, as a part of the transaction previously mentioned. Some of the equipment was sold for a price in excess of its adjusted basis at the beginning of the year 1958, some of it was sold for a price lower than its adjusted basis at the beginning of 1958 but in excess of its adjusted basis at the end of 1958, and the remainder was sold for prices below its adjusted basis at the end of 1958. The cost basis of all of this equipment as of December 31, 1958, as shown on petitioner's books and reported on its return for 1958 was $231,349.97 less retirements of $34,121.67 for a balance of $197,228.30 and the reserve for depreciation was $56,694.96 less retirements of $6,673.71 for a balance of $50,021.25, leaving a total adjusted basis in this equipment of $147,207.05 as of December 31, 1958. This equipment was sold on January 2, 1959, for a total sales price of $202,950.

In its corporation income tax return for 1958, petitioner deducted depreciation on equipment in the following amounts:

| | |
|---|---|
| Transferred from Smith Trucking Co. | $24,126.76 |
| Purchased 1958—used equipment | 5,163.76 |
| Purchased 1958—new equipment | 27,404.44 |
| Total | 56,694.96 |

In his notice of deficiency respondent disallowed depreciation claimed on the above equipment in the amount of $30,558.89. This was arrived at as follows. Respondent determined the useful lives of all the equipment in petitioner's business to be 1 year. If a particular piece of equipment was sold on January 2, 1959, for more than its cost basis shown on petitioner's books as of January 1, 1958, or the date in 1958 when it was acquired, respondent set up a salvage value for that piece of equipment at its full cost basis and allowed no depreciation

for 1958. If a piece of equipment was sold for less than its cost basis, respondent set up a salvage value for that piece of equipment equal to its sales price, and allowed the entire difference between the cost basis and salvage value as depreciation for the year 1958 (on the basis of a useful life of 1 year). In a few instances this resulted in the allowance of more depreciation on a particular piece of equipment than claimed by petitioner.

The prices for which the individual items of equipment were to be sold to Smith's Pride, Inc., on January 2, 1959, had been agreed upon between the parties to the sale prior to January 1, 1959.

OPINION

It is our understanding from the colloquy between counsel and the Court with respect to the depreciation issue when the case was called for trial, and from the briefs of the parties, that the dispute here is not whether the salvage values and useful lives estimated by the petitioner on individual pieces of equipment for purposes of computing depreciation were reasonable, when viewed from the beginning of the year 1958, but rather whether respondent was justified under the law in reviewing petitioner's depreciation schedule as of the end of the year 1958 and adjusting the useful lives and salvage values of the equipment in the light of facts that were known at that time. In simplified terms the issue here is whether petitioner is entitled to depreciation for the year of sale or the year immediately preceding the date of sale on personal property which is either sold near the end of the year or it is known at the end of the year will be sold immediately after the end of the year at prices in excess of the adjusted bases of that property as of the beginning of the taxable year involved.

While petitioner argues that there is no evidence that the prices for which the individual pieces of equipment would be sold were known as of December 31, 1958, petitioner's own witnesses testified that the sale was negotiated over a period of time and that the negotiators went down through the inventory of equipment item by item and agreed on a sales price for each item. We are convinced from the evidence and the circumstances that the price for which each piece of equipment was to be sold on January 2, 1959, had been agreed upon and was known as of December 31, 1958; and we have so found as a fact. We approach this issue on that basis.

The applicable statute, section 167(a), provides that there shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear, and tear of property used in a trade or business. The pertinent parts of section 1.167(a)–1, Income Tax Regs., as it read in 1958, provided in paragraph (a) that:

The allowance is that amount which should be set aside for the taxable year in accordance with a reasonably consistent plan (not necessarily at a uniform

rate), so that the aggregate of the amounts set aside, plus the salvage value, will, at the end of the estimated useful life of the depreciable property, equal the cost or other basis of the property * * *

Paragraph (b) of the regulations provides that for purposes of section 167—

the estimated useful life of an asset is not necessarily the useful life inherent in the asset but is the period over which the asset may reasonably be expected to be useful to the taxpayer in his trade or business * * *

See also *Massey Motors* v. *United States*, 364 U.S. 92 (1960). The paragraph also provides:

The estimated remaining useful life may be subject to modification by reason of conditions known to exist at the end of the taxable year and shall be redetermined when necessary regardless of the method of computing depreciation. However, estimated remaining useful life shall be redetermined only when the change in the useful life is significant and there is a clear and convincing basis for the redetermination. * * *

Paragraph (c) of the regulations provides:

Salvage value is the amount (determined at the time of acquisition) which is estimated will be realizable upon sale or other disposition of an asset when it is no longer useful in the taxpayer's trade or business or in the production of his income and is to be retired from service by the taxpayer. Salvage value shall not be changed at any time after the determination made at the time of acquisition merely because of changes in price levels. However, if there is a redetermination of useful life under the rules of paragraph (b) of this section, salvage value may be redetermined based upon facts known at the time of such redetermination of useful life. * * *

The facts in this case are that petitioner acquired the depreciable assets involved either at the beginning of or during the year 1958, that, presumably based on the assumption that it would continue to use these assets in its business throughout their useful lives, its officers made an estimate of the useful lives of the assets as of the date of acquisition and also an estimate of the salvage values of those assets at the end of their estimated useful lives, that it used these assets in its business throughout the year 1958 and computed depreciation thereon based on the above estimates, but that by the end of the year 1958 and long prior to the time its tax return for the year 1958 was due it was known that it would sell all of these assets after only 1 year's use in its business at agreed upon prices, which in most cases exceeded petitioner's basis in those assets at the beginning of 1958. Upon auditing petitioner's return for 1958, the first and only year in which petitioner used these assets in its business, respondent determined that all of the assets had a useful life in petitioner' s business of only 1 year and determined that they had a salvage value equal to the prices for which they were sold on January 2, 1959, except where the sales prices exceeded petitioner's basis for depreciation at the beginning of the period, in which event the salvage values were determined to be in an amount equal to peti-

tioner's basis at the beginning of the period. Respondent computed petitioner's allowable depreciation for 1958 on the basis of those determinations, which were based on conditions and facts known to exist as of the end of the taxable year.

The statute permits deduction of a "reasonable" allowance for depreciation, and the above-quoted provisions of the regulations have been approved by the courts as a reasonable interpretation of the statute. See *Massey Motors* v. *Commissioner, supra; Hertz Corp.* v. *United States*, 364 U.S. 122 (1960) ; *Cohn* v. *United States*, 259 F. 2d 371 (C.A. 6, 1958) ; *M. Pauline Casey*, 38 T.C. 357 (1962) ; *Wier Long Leaf Lumber Co.*, 9 T.C. 990 (1947), reversed on another issue 173 F. 2d 549 (C.A. 5, 1949). Respondent's actions here are in complete accord with the provisions of his regulations. He redetermined the estimated useful life of petitioner's depreciable assets in the light of conditions known to exist as of the end of the taxable year involved and at the same time redetermined the salvage value thereof based upon facts also known as of the end of the taxable year. It would be unrealistic and unreasonable to ignore the facts that the assets were to be sold after 1 year of use in petitioner's business at prices in excess of petitioner's basis at the beginning of the year, when those facts were known by the end of the first year of petitioner's existence. Certainly, the law does not contemplate an allowance for depreciation based on estimates made at the beginning of the year and completely ignoring a change in conditions which occurred by the end of that year.

Petitioner contends that it should be entitled to recover its investment in these assets ratably over the period the assets were used in its business and that since these assets were used throughout the year 1958 to produce income and suffered physical exhaustion it should be entitled to some depreciation thereon for that year. The answer to this argument is that for purposes of depreciation petitioner's investment in these assets was petitioner's basis in those assets less salvage value, and that under the circumstances of this case it was known by the end of petitioner's first year that the salvage value equaled the resale price. Consequently, there was no depreciation of petitioner's investment in the assets through physical use during the year 1958.

In two recent cases, both decided July 15, 1964, *United States* v. *Motorlease Corporation*, 334 F. 2d 617, reversing 215 F. Supp. 356 (D. Conn. 1963), and *Fribourg Navigation Co.* v. *Commissioner*, 335 F. 2d 15, affirming a Memorandum Opinion of this Court, the Court of Appeals for the Second Circuit denied depreciation deductions for the years of sale on the principle, which appears to have been intended as a rule of law, that where the sales price of depreciable assets exceeds the taxpayer's adjusted basis in those assets as of the beginning of the year of sale, no depreciation is allowable for the year

of sale. More recently this Court, in *Macabe Co.*, a court-reviewed opinion, 42 T.C. 1105 (1964), allowed a deduction for depreciation in the year of sale, under the circumstances there presented, even though the sales price exceeded the taxpayer's adjusted basis in the property at the beginning of the year. While in *Macabe* this Court did not accept the principle enunciated by the Second Circuit as a rule of law, neither did it hold that depreciation is always allowable where there has been physical use of depreciable assets in the business during the year and taxpayer has an undepreciated basis in the assets at the beginning of the year based on an estimated salvage value.

The facts in this case distinguish it from the *Macabe* case. Among these are the facts that in *Macabe* the taxpayer had used the property in its business for several years before the unanticipated sale, and had, at the time it was placed in use, made a reasonable estimate of the useful life of the asset in its business and a reasonable estimate of its salvage value at the end of that estimated useful life; and respondent made no redetermination of useful life. Here the fact of the sale and the sales price were known to petitioner by the end of petitioner's first taxable year, and respondent redetermined both the useful life and salvage value on the basis of those known facts. Also, in *Macabe* the Court found that the gain realized on the sale was due to appreciation in market value; here we do not think the evidence justifies such a finding. Here petitioner had a basis carried over from the partnership and we do not have sufficient evidence to determine when the market appreciation, if any, occurred.

We have decided this issue in this case in favor of respondent as a factual matter. We do not think our conclusion violates the principles enunciated by either the Court of Appeals or this Court in the cases last above mentioned.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

FISHER, *J.*, concurs in the result.

HOYT, *J.*, dissents.

————

FAY, *J.*, concurring: Although quite frankly I find some of the language in the majority opinion regarding the matter of redetermination of estimated useful life inconsistent with the principles set forth in *Macabe Co.*, 42 T.C. 1105 (1964), I, nevertheless, believe that the result reached by the Court in the instant case is correct. I concur with the majority view that there is no rule of law under which depreciation claimed in the year of sale is disallowed because the sales price of depreciable assets exceeds the taxpayer's adjusted basis therein as of the beginning of the year. I also believe that respondent can disallow a depreciation deduction in the year of sale, where, as happened here, the sale occurs barely 1 year after the assets

were acquired and respondent regards the sale as evidence that the taxpayer intended to hold the assets for merely the period he actually did hold them, in this case 1 year. Where the respondent does this the burden of proof is on the taxpayer to show (1) that at the time he acquired the asset he intended to hold it for the period *estimated* by him, (2) that the other estimates in the depreciation equation adopted by him were accurate, and (3) that appreciation in market value caused the amount received upon the sale of the asset to exceed his estimate of salvage value.

The findings of fact in the instant case indicate that petitioner introduced no shred of evidence that it intended to hold the assets in question longer than 1 year, that its estimates of salvage value were correct, or that the gain realized resulted from market appreciation rather than from the use of inaccurate estimates in its own depreciation schedules or the schedules of its transferor. (Some of the assets sold were acquired in a nontaxable transaction and had carryover bases.) Only gains due to market appreciation (and not artificial or pseudo gains due to excessive depreciation) are taxable under section 1231. In *United States* v. *Ludey*, 274 U.S. 295 (1927), the Supreme Court, in the following analogy, enunciated what I believe remains to be the basic principle of depreciation accounting:

The theory underlying this allowance for depreciation is that by using up the * * * [asset], a gradual sale is made of it. The depreciation charged is the measure of the cost of the * * * [asset] which has been sold [p. 301].

If petitioner were allowed the full measure of depreciation claimed by it, under the circumstances of this case, it would have recovered tax free through the depreciation provisions proportionately more of its cost or investment in the assets than it is entitled to recover.

This case, in my view, does not involve the question of whether respondent, when an unanticipated sale occurs, is permitted under the depreciation provisions to abandon the taxpayer's *estimate* of useful life and to substitute in lieu thereof the actual period the asset was held. In short, I believe that the facts of this case are more analogous to *Massey Motors* v. *United States*, 364 U.S. 92 (1960), and *Hertz Corp.* v. *United States*, 364 U.S. 122 (1960) (where the taxpayers knew at the time they acquired the assets that they would sell them prior to the expiration of the estimates of useful life used in their depreciation schedules), rather than to *Macabe Co., supra; Fribourg Navigation Co.* v. *Commissioner*, 335 F. 2d 15 (C.A. 2, 1964), affirming a Memorandum Opinion of this Court; and *Cohn* v. *United States*, 259 F. 2d 371 (C.A. 6, 1958).

As to whether respondent is permitted under the depreciation provisions to equate the term "useful life" with the period the asset was actually held, I believe that the Supreme Court in *Massey Motors* v.

*United States, supra,* has indicated that he may not so do. That Court, after emphasizing that prediction or estimation is the very essence of depreciation accounting, concluded that—

Congress intended that the taxpayer should, under the allowance for depreciation, recover only the cost of the asset less the estimated salvage, resale or second-hand value. This requires that the useful life of the asset be *related to the period for which it may reasonably be expected to be employed in the taxpayer's business.* Likewise salvage value must include estimated resale or second-hand value. * * * [Emphasis supplied. 364 U.S. at 107.]

See also *Macabe Co., supra* at 1116. Useful life is necessarily an estimate which may not be equated with the actual holding period of an asset.

FISHER and FORRESTER, *JJ.*, agree with this concurring opinion.