D. B. ANDERS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5094–64. Filed September 6, 1967.

*J. Glenn Hahn* and *Walter J. Kennedy*, for the petitioner.
*Edward E. Pigg*, for the respondent.

BRUCE, *Judge:* Respondent determined a deficiency in income tax of D. B. Anders, Inc., for the taxable year ended July 31, 1961, in the amount of $121,160 and notified petitioner that the deficiency and interest, constituting his liability as transferee of assets of the corporation, would be assessed against him. The sole issue is whether, in a liquidation under section 337 of the Internal Revenue Code of 1954, the corporation is entitled to the nonrecognition of gain on items, the cost of which has previously been deducted. Petitioner claims an overpayment.

## FINDINGS OF FACT

The stipulation of facts and the exhibits attached thereto are incorporated by reference.

D. B. Anders is an individual residing in Shawnee Mission, Kans.

Service Industrial Cleaners, Inc., was a corporation organized in August 1947 under the laws of Kansas with its principal offices in Kansas City, Kans. At all times material its stock was owned by D. B. Anders directly or through his nominees. By amendment filed May 17, 1961, its name was changed to D. B. Anders, Inc. This corporation is referred to herein as Service, or as the corporation.

Service filed a corporation income tax return for the fiscal year ended July 31, 1961, on an accrual basis, with the district director of internal revenue at Wichita, Kans., on January 15, 1962, pursuant to an extension granted.

Service was engaged in the business of conducting and providing a rental service of cleaned and laundered towels, seat covers, fender covers, wiping materials and dust cloths, coats, coveralls, shirts, pants, and other textiles and apparels, including dusting and wiping equipment, sweeping tools, mops, and accessories, herein referred to collectively as rental items, as well as conducting a cleaning and laundering service of substantially the same type of items owned by others, and in general conducting an industrial laundry business.

For Federal income tax purposes Service charged to its expense accounts when purchased the cost of the rental items used in conducting its rental service business. At the end of each taxable year the expense accounts were credited with the costs of the ending inventory of items which had not been placed in service at the end of the taxable year.

In its taxable year ended July 31, 1961, prior to May 1961, Service had approximately 500 accounts to which it was furnishing laundry rental service. The average weekly gross income from rental and other laundry business was from $19,000 to $20,000. Some 13 percent to 20 percent of this was attributable to laundry of property of others, referred to as NOG (not our goods). The remainder was attributable to laundry rental business.

The garment rental business was normally handled on a yearly contract basis. Service had about 40,000 garments in circulation. Most of the items had a useful life of 12 to 18 months, some longer, depending upon how frequently washed and whether of seasonal use in the case of light or heavy materials. Some had the name of the employer-user and in some cases of the individual employee embroidered thereon. Its garment customers included General Motors, Ford Motor Co., Trans World Airlines, and Bendix, as well as garages, florists, filling stations, motorcar dealers, and small manufacturers. Its shop towel customers

included railroads, pipelines, garages, filling stations, printers, and paint factories. Union Pacific Railroad was serviced on a system-wide basis from Service's plants in Kansas City. Office buildings were the principal users of its dust control items. Service's replacement costs of these items averaged about $200,000 per year.

In May 1961 Anders reached an agreement for the sale of Service's business to a group of persons. The purchasers desired to carry on the business under a different corporation with the same name.

On May 12, 1961, the board of directors and the stockholders of Service adopted resolutions approving and authorizing the sale of the corporation's properties and business, changing the corporate name to D. B. Anders, Inc., and adopting a plan of complete liquidation pursuant to the terms of section 337 of the Internal Revenue Code of 1954.

As of May 16, 1961, Service entered into an "Agreement of Sale" with Albert Gitlow, Abraham Gitlow, Ben F. Singer, and Joseph L. Fradkin, herein referred to as the purchasers, acting in behalf of Service Industrial Cleaners, Inc., a Kansas corporation, formed on or about May 17, 1961, which corporation is hereinafter referred to as buyer.

Under the agreement, Service, as "Seller" and the named individuals, as "Purchasers" agreed to the sale and transfer to the purchasers or their assigns of all seller's inventory of the articles used in conducting the seller's rental service business, furniture and equipment, accounts receivable, interest in real property, name, routes, customers' patronage, and goodwill.

The price was computed in the contract as follows:

| | |
|---|---|
| Inventory of rental items | $228,000 |
| Furniture and equipment | 88,500 |
| Sweeping tools, mops, and accessories | 5,000 |
| Goodwill and customer patronage | 110,000 |
| Real property | 78,000 |
| Total | 509,500 |

In addition, there was to be paid a sum equal to the trade accounts receivable at the close of business May 17, 1961, and prepaid items as of that date.

The parties also agreed that the foregoing price did not include new, unused, and unwashed garments and rental service items, new and unused sweeping tools and washroom supplies, fuel, and new automobile and truck tires, and that there would be added to the price an amount equal to seller's cost of such items.

As of May 17, 1961, Anders entered into a covenant with the purchasers to refrain from competition with them or their corporation in the conduct of rental service or laundry business.

As of May 22, 1961, Service, then known as D. B. Anders, Inc., entered into an agreement with the purchasers to a similar effect. As of the same date the corporation delivered to the buyer a bill of sale of certain of its assets. On or about May 22 or 23, 1961, the sale by the corporation of substantially all its assets to the buyer was completed.

Pursuant to the plan of liquidation the corporation distributed all its assets in complete liquidation to petitioner, its sole stockholder, within the 12-month period beginning May 12, 1961.

The corporation filed with the secretary of state of the State of Kansas its resolution of dissolution in April 1962 and its corporate existence ceased.

It is stipulated that the corporation is entitled to a deduction for depreciation on its building and improvements, machinery and equipment, and office equipment for its taxable year ended July 31, 1961, in the amount of $7,370.77.

The corporation paid its Federal income taxes for its taxable year ended July 31, 1961, as follows:

| Date Paid | Amount |
| --- | --- |
| Oct. 13, 1961 | $20,000.00 |
| Jan. 15, 1962 | 11,063.38 |

Petitioner paid additional Federal income taxes assessed against the corporation for its taxable year ended July 31, 1961, as follows:

| Date Paid | Amount |
| --- | --- |
| May 27, 1963 | $3,832.80 |
| Oct. 28, 1963 | 5,994.30 |

On its income tax return for the fiscal year ended July 31, 1961, the corporation reported a gain of $446,601.89 arising out of the sale of substantially all its assets to the buyer, and claimed exclusion of such gain from taxable income under section 337, I.R.C. of 1954. The gain reported included $233,000, which was the amount of the consideration received by Service from Buyer allocated to the items-in-use in its laundry rental business.

The inventory of rental items which were transferred in the sale had a basis of zero to the corporation.

### OPINION

Petitioner owned all the stock of Service Industrial Cleaners, Inc., a Kansas corporation organized in 1947, which adopted a plan of liquidation in May, 1961, sold its property, changed its name to D. B. Anders, Inc., and within 12 months after the adoption of the plan distributed all of its assets in complete liquidation to him. The corporation duly filed a notice of dissolution and its existence ceased in April 1962. Petitioner received distributions in excess of the deficiency determined by respondent against the corporation for the taxable year ended

July 31, 1961, and is admittedly liable as a transferee for such deficiency if the corporation is liable. Petitioner contends that under the provisions of section 337 [1] no gain is to be recognized to the corporation from the sale of its property in liquidation in May 1961.

The parties are in agreement that the corporation adopted a plan of complete liquidation after June 22, 1954 (the date specified in section 337), sold its property, and distributed all its assets within the 12-month period beginning on the date the plan was adopted. They further agree that the rental items involved were not stock in trade, property includable in inventory, or property held by the corporation for sale to customers in the ordinary course of its trade or business. On the basis of these facts, it appears that there was literal compliance with the requirements of section 337(a), and further, not being property specifically excluded by section 337(b)(1), that the rental items involved were property, the gain or loss from the sale of which is not to be recognized to the corporation under section 337(a). See sec. 1.337–3, Income Tax Regs.; Rev. Rul. 59–120, 1959–1 C.B. 74.

Respondent contends, however, that $233,000 of the total consideration received by the corporation on the sale is includable in the taxable income of the corporation in the year of receipt, on the ground that this amount was for rental items which had previously been expensed by the corporation and it had received full tax benefit therefrom. On brief, respondent states that he "relies on the well established

---

[1] SEC. 337. GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS.

(a) GENERAL RULE.—If—

(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and

(2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,

then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

(b) PROPERTY DEFINED.—

(1) IN GENERAL.—For purposes of subsection (a), the term "property" does not include—

(A) stock in trade of the corporation, or other property of a kind which would properly be included in the inventory of the corporation if on hand at the close of the taxable year, and property held by the corporation primarily for sale to customers in the ordinary course of its trade or business,

(B) installment obligations acquired in respect of the sale or exchange (without regard to whether such sale or exchange occurred before, on, or after the date of the adoption of the plan referred to in subsection (a)) of stock in trade or other property described in subparagraph (A) of this paragraph, and

(C) installment obligations acquired in respect of property (other than property described in subparagraph (A)) sold or exchanged before the date of the adoption of such plan of liquidation.

(2) NONRECOGNITION WITH RESPECT TO INVENTORY IN CERTAIN CASES.—Notwithstanding paragraph (1) of this subsection, if substantially all of the property described in subparagraph (A) of such paragraph (1) which is attributable to a trade or business of the corporation is, in accordance with this section, sold or exchanged to one person in one transaction, then for purposes of subsection (a) the term "property" includes—

(A) such property so sold or exchanged, and

(B) installment obligations acquired in respect of such sale or exchange.

rule that if an amount deducted from gross income in one taxable year is recovered in a later year, the recovery is income in the later year." The rule referred to is commonly known as the tax-benefit rule or doctrine.

The tax-benefit rule was originally developed through court decisions. Mertens, Law of Federal Income Taxation, sec. 7.34 (1962 rev.) ; *Estate of William H. Block*, 39 B.T.A. 338 (1939), affirmed sub nom. *Union Trust Co. of Indianapolis* v. *Commissioner*, 111 F. 2d 60 (C.A. 7, 1940), certiorari denied 311 U.S. 658; *Budd Co.* v. *United States*, 252 F. 2d 456, 458 (C.A. 3, 1957). Though not expressly stated in the Code, it has received indirect statutory recognition, specifically with respect to bad debts, prior taxes, and "delinquency" amounts in section 22(b) (12) of the 1939 Code, substantially reenacted as section 111 of the 1954 Code.[2] *T. O. McCamant*, 32 T.C. 824. The "rule of exclusion" prescribed by the statute has been extended by Treasury regulations[3] to "all other losses, expenditures, and accruals made the basis of deductions from gross income for prior taxable years." For the purposes of the present case, it is not necessary to express any opinion as to whether or not the cited regulation is an unauthorized extension of the otherwise limited congressional approval of the tax-benefit doctrine and we refrain from doing so. See, however, *Alice Phelan Sullivan Corp.* v. *United States*, 381 F. 2d 399 (Ct. Cl. 1967).

Assuming, for the purposes of this case, that the amount in question represents the recovery of expenses previously deducted from gross

---

[2] SEC. 111. RECOVERY OF BAD DEBTS, PRIOR TAXES, AND DELINQUENCY AMOUNTS.

(a) GENERAL RULE.—Gross income does not include income attributable to the recovery during the taxable year of a bad debt, prior tax, or delinquency amount, to the extent of the amount of the recovery exclusion with respect to such debt, tax, or amount.

(b) DEFINITIONS.—For purposes of subsection (a)—

\* \* \* \* \* \* \*

(4) RECOVERY EXCLUSION.—The term "recovery exclusion", with respect to a bad debt, prior tax, or delinquency amount, means the amount, determined in accordance with regulations prescribed by the Secretary or his delegate, of the deductions or credits allowed, on account of such bad debt, prior tax, or delinquency amount, which did not result in a reduction of the taxpayer's tax under this subtitle \* \* \* reduced by the amount excludable in previous taxable years with respect to such debt, tax, or amount under this section.

[3] Sec. 1.111–1, Income Tax Regs., provides as follows :

Sec. 1.111–1 Recovery of certain items previously deducted or credited.

(a) *General.* Section 111 provides that income attributable to the recovery during any taxable year of bad debts, prior taxes, and delinquency amounts shall be excluded from gross income to the extent of the "recovery exclusion" with respect to such items. The rule of exclusion so prescribed by statute applies equally with respect to all other losses, expenditures, and accruals made the basis of deductions from gross income for prior taxable years, including war losses referred to in section 127 of the Internal Revenue Code of 1939, but not including deductions with respect to depreciation, depletion, amortization, or amortizable bond premiums. The term "recovery exclusion" as used in this section means an amount equal to the portion of the bad debts, prior taxes, and delinquency amounts (the items specifically referred to in section 111), and of all other items subject to the rule of exclusion which, when deducted or credited for a prior taxable year, did not result in a reduction of any tax of the taxpayer under subtitle A \* \* \*

income by the corporation and that such recovered amount would be taxable to the corporation in the year of recovery under other circumstances, it is nevertheless gain which resulted to the corporation from the sale of all its assets pursuant to a plan of complete liquidation and is nonrecognizable *to the corporation* under the provisions of section 337.

Respondent contends that by the enactment of section 337, Congress never intended the realization of such income to escape taxation at the corporate level.

The provisions of section 337 first appeared in the Internal Revenue Code of 1954. Their primary purpose was to eliminate the uncertainties attendant upon the Supreme Court decisions in *Commissioner* v. *Court Holding Co.*, 324 U.S. 331 (1945), and *United States* v. *Cumberland Public Service Co.*, 338 U.S. 451 (1950), and to permit a liquidating corporation to make a tax-free sale of all its assets with but a single tax being imposed at the stockholder level without regard to the form of the transaction. H. Rept. No. 1337, 83d Cong., 2d Sess., p. A106; *Bird Management, Inc.*, 48 T.C. 586; *Frank W. Verito*, 43 T.C. 429; *Mountain Water Co. of La Crescenta*, 35 T.C. 418.

Where, as here, application of the tax-benefit rule would contravene the clear and unambiguous provisions of section 337(a), we think it should not be applied. As was stated by the Supreme Court in *Lewyt Corp.* v. *Commissioner*, 349 U.S. 237, 240 (1955), "where the benefit claimed by the taxpayer is fairly within the statutory language and the construction sought is in harmony with the statute as an organic whole, the benefits will not be withheld from the taxpayer though they represent an unexpected windfall."

In support of his contention that the tax-benefit rule is applicable here, respondent has cited Rev. Rul. 61–214, 1961–2 C.B. 60, wherein it was held that a portion of the proceeds received by an office building corporation, in a sale in complete liquidation, for a stockpile of coal, plumbing supplies, and small tools, the cost of which had been deducted in prior years, was to be treated as ordinary income under section 61 and not as nonrecognized gain under section 337(a).[4]

This ruling is no more than an expression of the opinion or position of the Internal Revenue Service with respect to the law applicable to the facts recited therein and does not have the force of law. See the preface to the Cumulative Bulletin; Rogovin (then Chief Counsel, I.R.S.), "The Four R's: Regulations, Rulings, Reliance and Retroactivity—A View From Within," 43 Taxes 756 (Dec. 1965); *Pictorial*

---

[4] In Rev. Rul. 59–308, 1959–2 C.B. 110, respondent held that no taxable gain was to be recognized by a corporation, under sec. 337, from the sale during the period of liquidation of emergency facilities amortized under sec. 168 of the Code. In the stated case the property had been completely amortized. In that ruling respondent conceded that the facilities, not having been specifically excluded from the definition of "property" as used in sec. 337, were included in that term.

*Review Co.* v. *Helvering*, 68 F. 2d 766, 768; *Radiant Glass Co.* v. *Burnett*, 54 F. 2d 718, affirming 16 B.T.A. 610; *Bush #1*, 48 T.C. 218, 232.

Though noted "without comment" in *Hollywood Baseball Association*, 42 T.C. 234, 262 fn. 6, affd. 352 F. 2d 350 (C.A. 9, 1965), vacated and remanded 383 U.S. 824, Rev. Rul. 61-214 has not to our knowledge been approved by any court. The conclusions reached are not supported by the authorities cited therein, are clearly contrary to the provisions of section 337(a) and, in our opinion, are not a valid interpretation of the statute. See Gutkin & Beck, "Section 337 : IRS Wrong in Taxing, at Time of Liquidation, Items Previously Deducted." 17 J. Taxation 146.

In *Central Building & Loan Association*, 34 T.C. 447 (1960), the assets sold in the liquidation sale included notes receivable on which certain interest had been earned to the date of sale. This Court held there was a collection of interest rather than a "sale or exchange" of property and that such amount was not subject to nonrecognition under section 337.

In *Commissioner* v. *First State Bank of Stratford*, 168 F. 2d 1004 (C.A. 5, 1948), reversing 8 T.C. 831, certiorari denied 335 U.S. 867, a bank voted to declare a dividend in kind and distributed to its shareholders certain notes which had been charged off as worthless. At the time of distribution substantial collections had been effected on the notes and further substantial collections were effected after distribution. The Court of Appeals held the bank taxable under the anticipatory assignment of income rule. Obviously, section 337, enacted some 6 years later, was not involved, nor was there a "sale or exchange" of property in partial or complete liquidation.

Neither of these two cases which were cited in Rev. Rul. 61-214, support the ruling or respondent's contention with respect to the application of the tax-benefit rule to a sale in complete liquidation under section 337. Nor do any of the other cases cited by respondent on brief.

In *Commissioner* v. *Kuckenberg*, 309 F. 2d 202 (C.A. 9, 1962), modifying 35 T.C. 473 (1960), certiorari denied 373 U.S. 909, the Court of Appeals rejected the view that section 337 prevented the gain realized by a liquidating corporation from the sale of completed contracts from being taxable to the corporation and treated the transaction as an anticipatory assignment of earned income.

In *Pridemark, Inc.* v. *Commissioner*, 345 F. 2d 35 (C.A. 4, 1965), affirming in part and reversing in part 42 T.C. 510, certain proceeds received for the assignment of uncompleted sales contracts for prefabricated houses were held not to be exempt under section 337. The Court of Appeals referred to the Tax Court holding that the sale of the contracts constituted an anticipatory assignment of income and stated : "The uncompleted sales contracts not being capital assets, the

proceeds received for their assignment are to be taxed as ordinary income."

*West Seattle National Bank of Seattle*, 33 T.C. 341 (1959), affd. 288 F. 2d 47 (C.A. 9, 1961); and *J. E. Hawes Corp.*, 44 T.C. 705 (1965), both involved sales of accounts receivable with respect to which reserves for bad debts had been deducted. It was held that the amount received equal to the bad debt reserves was ordinary income and section 337 did not apply because the income sought to be taxed did not represent gain from the sale of assets.

In the instant case, the rental items were the *operating assets*—property used to generate income. They were the trees not the fruit. The sale was of assets, not income. The fact that their income-producing potential had not been exhausted when sold did not alter their character as property used in the business of the corporation. There is no evidence of stockpiling or that the supply of rental items was not reasonable. Replacements were purchased only as needed and the business required. They were as much property used in the trade or business as the machines used to wash them or the trucks used to transport them.

Respondent has not questioned the propriety of expensing the rental items when purchased, or the fact that they were not inventoried. See sec. 446 (a) and (c), I.R.C. 1954; sec. 1.446–1(c)(iv), Income Tax Regs.; sec. 471, I.R.C. 1954; sec. 1.471–1, Income Tax Regs. See also *Smith Leasing Co.*, 43 T.C. 37, wherein this Court held that respondent could not require the setting up of an inventory as of the end of the year preceding liquidation.[5]

The fact that the cost of the rental items had previously been expensed does not preclude the nonrecognition of gain *to the corporation* under section 337. While there is nothing in the legislative history to indicate Congress was aware of the fact pattern of this case, the language of the statute is clear and unambiguous. If the result here is undesirable, the remedy is for Congress, not the courts. Cf. *Commissioner v. South Lake Farms, Inc.*, 324 F. 2d 837, 840 (C.A. 9, 1963), affirming 36 T.C. 1027. Whatever may have been the initial intention in enacting section 337, it contains no requirements other than those spelled out. Cf. *Estate of Hugh Miller*, 48 T.C. 265. In our opinion, the rental items were "property" within the definition of section 337(b)(1) and there was a "sale" of such property on or about May 22 or 23, 1961, when the transfer by Service of all its assets to buyer was completed, pursuant to a plan of complete liquidation and the agreement of sale. Accordingly, we hold that the gain from the sale of the rental items is not to be recognized to the corporation.

In view of our holding that such gain is not to be recognized to the corporation, it follows that petitioner is not liable as transferee.

*Decision will be entered under Rule 50.*

---

[5] In this connection, it is to be noted that had the rental items-in-use been inventoried, sec. 337(b)(2) would have required the nonrecognition of gain *to the corporation.*