Louis SPITALNY and Betty Spitalny, his wife, Plaintiffs,

v.

UNITED STATES of America, Defendant.

William ERDWURM and Bart F. Erdwurm, his wife, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Nos. Civ–5665 Phx., Civ–5666 Phx.

United States District Court
D. Arizona.

Sept. 5, 1968.

Jennings Strouss, Salmon & Trask, Phoenix, Ariz., for plaintiffs.

Edward E. Davis, U. S. Atty., Phoenix, Ariz., for defendant.

## OPINION AND ORDER

CRAIG, District Judge.

These two actions, consolidated by the Court at pretrial, were instituted by the plaintiffs as transferees of All-State Cattle Feeding Company for recovery of $55,204.85 in each action paid as income tax for the transferor corporation's fiscal year ending July 31, 1960.

## FACTS

The stipulation of facts filed April 15, 1968 is incorporated in this opinion by reference.

Plaintiffs William Erdwurm and Bart F. Erdwurm are husband and wife, and plaintiffs Louis Spitalny and Betty Spitalny are husband and wife. Both couples reside in Phoenix, Arizona. (Hereinafter referred to as taxpayers.) On February 13, 1957, the taxpayers organized All-State Cattle Feeding Company pursuant to the laws of Arizona. On March 1, 1957, the taxpayers transferred all the assets owned by their existing partnership, All-State Cattle Feeding Company, to the newly formed corporation. The stock in the newly formed corporation was issued one-half to Mr. Spitalny and one-half to Mr. Erdwurm, each holding such stock as community property of himself and his wife.

The corporation, until liquidation in 1960, carried on the cattle feeding busi-

ness previously conducted by the predecessor partnership. The corporation filed corporate tax returns with the District Director of Internal Revenue at Phoenix based on a fiscal year ended July 31. The corporation used the cash basis of accounting.

Pursuant to a corporate meeting held February 3, 1960, the stockholders determined that because of a contemplated sale of the operating assets of the corporation, the corporation should adopt a plan of liquidation, and distribute all of its assets within twelve months. On March 14, 1960, the corporation entered into an agreement with Hughes and Ganz Cattle Company, an Arizona corporation, to sell all of its operating assets, equipment, feed, good will, buildings, and other improvements located upon land leased by the corporation for its feed lot, and including all its inventory of feeds and other supplies, and all cattle then being fed by the corporation. Hughes and Ganz Cattle Company, after acquiring the assets of the corporation, continued to carry on the cattle feeding business theretofore conducted by the corporation.

The sale was completed and the selling price agreed upon by the parties was allocated by them as follows:

Feed and other supplies
on hand ..............$ 177,437.37
Cattle .................. 975,907.58
Equipment, feed mills, buildings, leasehold improvements, and leasehold .... 175,000.00
Total ......$1,328,344.95

The corporation maintained an inventory of feed and other supplies on hand. During the period August 1, 1959 to February 3, 1960, the corporation purchased $607,968.02 of feed and other supplies. This amount is approximately one-half of the purchases for the period August 1, 1958 to July 31, 1959. For Federal income tax purposes for its fiscal year ended July 31, 1960, the corporation deducted from taxable income the entire above amount of feed and other supplies. At the time of the sale the corporation had on hand $177,437.37 of the feed and supplies purchased during the fiscal year.

Pursuant to the plan of liquidation, the corporation distributed all of its assets in complete liquidation to the taxpayers within the twelve-month period beginning February 3, 1960. The portion of the selling price allocated to the sale of feed and other supplies was excluded by the corporation on its corporate income tax return on the ground that it constituted nonrecognizable gain under Section 337 of the Internal Revenue Code of 1954. (26 U.S.C., 1954 ed., § 337)

The corporation paid Federal income tax for the year ended July 31, 1960 in the amount of $91,310.57. The Commissioner assessed an income tax deficiency on December 8, 1964 against taxpayers as the transferees of the corporation in the amount of $110,409.71. The claimed deficiency arose from a disallowance by the Commissioner of depreciation of $9,405.-20, legal and accounting fees of $3,501.71 incurred in connection with the sale, and the addition to the corporate income of $177,437.37, the agreed cost of the unconsumed feed and supplies on hand at the time of the sale.

On October 7, 1964, the taxpayers paid the assessed deficiency. On January 25, 1965, timely claims for refund were filed. After more than six months had elapsed since the taxpayers filed their claims for refund, they brought these timely actions in this Court to recover the sums paid with interest.

The parties have agreed on the disposition of the depreciation and legal and accounting fees issues. Therefore, the sole remaining issue is whether the proceeds from the sale of feed and other supplies, the cost of which was previously deducted, is excludable from the gross income of the corporation pursuant to 26 U.S.C., 1954 ed., § 337.

This case came on for trial to this Court sitting without a jury on May 14, 1968. At that time it was submitted on the record and on written memoranda to be filed by all parties and taken under advisement. Defendant's trial memorandum was filed on May 16, 1968; plain-

tiffs' reply memorandum was filed on June 21, 1968.

## OPINION

■ Section 337, Internal Revenue Code of 1954, was enacted to clarify a seeming exaltation of form over substance in two tax decisions of the United States Supreme Court. Commissioner of Internal Revenue v. Court Holding Company, 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981 (1945), held that for stockholders to liquidate a corporation, securing direct ownership of the appreciated assets, and then to sell the assets resulted in two taxable transactions—one to the corporation and one to the shareholders for their appreciated shares—if the corporation had first negotiated the sale. United States v. Cumberland Public Service Company, 338 U.S. 451, 70 S.Ct. 280, 94 L.Ed. 251 (1950), held that if at all times the corporation refused to negotiate the sale to the ultimate purchaser, and the shareholders themselves had only agreed to sell the assets after receiving them in liquidation, then there was only one tax —on the shareholders. This shadowy distinction between a sale by a corporation and distribution in kind followed by a stockholder sale caused lower courts considerable confusion. Congress in enacting § 337 sought to set forth a single rule regardless of the formalities of the transaction which would permit a tax-free sale of all of the assets of a liquidating corporation with but a single tax being imposed at the shareholder level. See, House Report No. 1337, Senate Report No. 1622 and Conference Report No. 2543, 3 U.S.Code Cong. & Adm.News, 1954 pp. 4025, 4629, 5280 (83rd Cong., 2nd Session); Bird Management, Inc., 48 T.C. 586 (1967).

The statute enacted provides that:

"(a) If—

(1) a corporation adopts a plan of complete liquidation * * * and,

(2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, * * *

then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period."

Section 337(b) (1) enumerates certain types of property excluded from the exemption in the general rule, § 337(a).

The United States argues that corporations which liquidate in "midstream"— i. e., where expenditures have been incurred before the related income is realized—if allowed to deduct these expenditures must include the corresponding income item for the final tax period in order to avoid understatement of taxable earnings.

■ In the instant case the liquidating corporation purchased $684,228.64 in feed and other supplies during its final taxable year. At the time of the sale, $177,437.37 of these purchases remained on hand. On its last tax return the corporation deducted the cost of feed and supplies consumed ($506,791.27), as well as the feed and supplies on hand at the time of sale.

The government objects to this procedure as permitting the income which would have been realized from the use of this feed and supplies to go untaxed as ordinary income because of the liquidation of the corporation pursuant to § 337. The sale of these assets resulted in taxation only at the lower capital gains rate. The United States contends that any gain from the sale of feed and supplies was not gain from the sale of appreciated assets which Congress intended to include in the nonrecognition of gain provision of § 337. See, e. g., Commissioner of Internal Revenue v. P. G. Lake, Inc., 356 U.S. 260, 78 S.Ct. 691, 2 L.Ed.2d 743 (1958); Commissioner of Internal Revenue v. Gillette Motor Transport, Inc., 364 U.S. 130, 80 S.Ct. 1497, 4 L.Ed.2d 1617 (1960); Hort v. Commissioner of Internal Revenue, 313 U.S. 28, 61 S.Ct. 757, 85 L.Ed. 1168 (1941); Commissioner of Internal Revenue v. Kuckenberg, 309 F.2d 202 (9th Cir., 1962), cert. den., 373 U.S. 909, 83 S.Ct. 1296, 10 L.Ed.2d 411 (1963); and Family Record Plan,

Inc. v. Commissioner of Internal Revenue, 309 F.2d 208 (9th Cir., 1962), cert. den., 373 U.S. 910, 83 S.Ct. 1297, 10 L.Ed.2d 411 (1963); and Pridemark, Inc. v. Commissioner of Internal Revenue, 345 F.2d 35 (4th Cir., 1965).

None of the cases on which the United States relies are analogous to this situation. Each involves money already fully earned or certain of being earned in the future but not yet payable at the time of liquidation, e. g., payment of money for the assignment of royalty rights (Lake); payment for rental value of property during period of government control (Gillette); payment in lieu of rent (Hort); payment for assignment of sums due on completed contract (Kuckenberg); payment for assignment of installment obligations (Family Record); and payment for assignment of Commissions (Pridemark). This case does not involve anticipatory assignment of income as characterizes the precedents cited by the government. The assets here were cattle feed and supplies which were to be used to produce fatted cattle. There was no guarantee or certainty that this production would occur and that income would ever be realized.

The government further contends that under generally accepted accounting principles it was improper to take a deduction of:

"costs incurred in the acquisition, production, or development of capital assets, inventory and other property used in the trade or business * * * until the year of sale, when the accumulated costs may be set off against the proceeds of the sale." United States v. Catto, 384 U.S. 102, 109, 86 S.Ct. 1311, 1315, 16 L.Ed.2d 398 (1966).

Based on this rule the United States maintains that the costs of unconsumed feed on hand at the time of sale would be deductible only as offsets to the selling price; apart from the sale such costs would constitute nondeductible expenditures. However, the government has failed to point out the exception existing since 1919 whereby the Commissioner has authorized "a current deduction for expenses incurred by farmers and ranchers in raising crops and animals," United States v. Catto, supra, 384 U.S. at 110, 86 S.Ct. at 1316, irrespective of when the sale of the asset acquired may occur.

Finally, the United States argues that the recovery of a prior deducted item results in taxable income at the time of recovery. The "tax benefit" rule was originally developed through court decisions. See, Estate of William H. Block, 39 B.T.A. (1939), affirmed, Union Trust Company of Indianapolis v. Commissioner of Internal Revenue, 111 F.2d 60 (7th Cir., 1940), cert. den., 311 U.S. 658, 61 S.Ct. 12, 85 L.Ed. 421 (1940); Budd Company v. United States, 252 F.2d 456 (3rd Cir., 1957), and codified for certain limited situations in 26 U.S.C., 1954 ed., § 111.

The cases cited by the government to support this argument are easily distinguished from the present situation. Commissioner of Internal Revenue v. First State Bank of Stratford, 168 F.2d 1004, 7 A.L.R.2d 738 (5th Cir., 1948), cert. den., 335 U.S. 867, 69 S.Ct. 137, 93 L.Ed. 412 (1948), involved a dividend in kind of promissory notes previously written off as worthless on which recovery was later made; Alice Phelan Sullivan Corporation v. United States, 381 F.2d 399, 180 Ct.Cl. 659 (1967), involved a charitable contribution based on a realty conveyance later recouped; Arcadia Savings and Loan Association v. Commissioner of Internal Revenue, 300 F.2d 247 (9th Cir., 1962) and West Seattle National Bank of Seattle v. Commissioner of Internal Revenue, 288 F.2d 47 (9th Cir., 1961), involved sale of accounts receivable at face value following a bad debt deduction. Only the last case involved a liquidation pursuant to § 337, and there the deduction previously taken, unlike in the present case, was covered specifically by § 111, and was taxable because it did not represent a gain from the sale of assets.

The only case cited to this Court which seems to agree on all fours with this cause is Anders v. Commissioner, 48 T.C. 815 (1967), now pending on appeal in the Court of Appeals for the Tenth Circuit. That case involved an industrial laundry which provided rental service of laundered items. The laundry charged the cost of these items, which had a useful life of approximately twelve to eighteen months, to expense when purchased. This corporation adopted a plan of liquidation pursuant to § 337, sold its assets to a new corporation, and distributed the proceeds within twelve months to its sole stockholder. In arriving at the purchase price, $233,000.-00 was allocated to the rental items previously deducted. The Tax Court held that the gain realized upon the rental items in the liquidation sale is not recognized to the corporation pursuant to § 337.

In the course if its opinion in *Anders*, the Tax Court refused to apply as being contrary to the authorities and the provisions of § 337(a), Rev.Rul. 61–214, C.B. 1961–2, 60, sought to be relied upon by the United States in this case. This Court also refuses to apply that ruling. See, Gutkin and Beck, "Section 337: IRS Wrong in Taxing at Time of Liquidation, Items Previously Deducted." 17 Journal of Taxation 146; Pomeroy, 49 American Bar Association Journal 298; 12 U.C.L.A. Law Review 1138 (1965).

In deciding *Anders,* the Tax Court said:

"* * * the rental items were the *operating assets*—property used to generate income. They were the trees not the fruit. The sale was of assets, not income. The fact that their income producing potential had not been exhausted when sold did not alter their character as property used in the business of the corporation. There is no evidence of stockpiling. * * *

"The fact that the cost of the rental items had previously been expensed does not preclude the nonrecognition of gain *to the corporation* under section 337." (emphasis in the original)

This statement is equally applicable to this case. This ruling may result in a windfall for the shareholders to the extent the price of stock was enhanced by the corporation's previously deducted expenditures which reduced income taxes without ever resulting in the expected income. However, as the Court of Appeals for the Ninth Circuit said in an analogous case, Commissioner of Internal Revenue v. South Lake Farms, 324 F.2d 837, 840 (9th Cir., 1963):

"It may be that if Congress had considered the problem now before us * * * it would have inserted language designed to reach * * * the results here sought by the Commissioner. But it did not do so. * * * If the result here is undesirable, the remedy is for Congress not the courts."

See, Anders v. Commissioner, supra; Lewyt Corporation v. Commissioner of Internal Revenue, 349 U.S. 237, 75 S.Ct. 736, 99 L.Ed. 1029 (1955).

For the foregoing reasons,

IT IS ORDERED that judgment be entered in favor of the plaintiffs in the above causes as prayed for in the complaint.

IT IS FURTHER ORDERED that attorneys for the plaintiffs shall have thirty (30) days from this date within which to submit proposed findings of fact, conclusions of law and form of judgment not inconsistent with the foregoing opinion. Counsel for defendant shall have fifteen (15) days within which to submit written objections thereto.